LAURA L. FORNEY, *Appellee,* v. THE FIDELITY MUTUAL LIFE INSURANCE COMPANY, *Appellant.*

No. 17,684.

.SYLLABUS BY THE COURT.

1. INSURANCE — *Premium — Default — Forfeiture — Revival — Waiver.* An insurance contract provided that upon default in payment of premium or premium obligation the policy should *ipso facto* become of no effect, and that a revival could be had by application, approval and payment of arrears—the insured being in good health. The insured gave his note for one year's premium and at its maturity defaulted. Shortly thereafter he made a partial payment and applied for revival, approval of which was withheld for the sole reason that the balance still due was not paid or arranged for. In fact the insured had, several days before his death and several months prior to the expiration of the insurance year, paid the balance to the company's agent, who failed to remit it to his principal. *Held,* that the policy should be deemed to have been in force.

2. PLEADINGS—*Variance—No Prejudicial Error.* While waiver should have been specifically pleaded instead of alleging, as the petition did, that the policy was in full force at the death of the insured, still as no motion was made for more specific allegations, no showing of injury or application for further

time, and the cause was fully tried, no materially prejudicial error was committed by permitting the plaintiff to introduce testimony to show waiver.

Appeal from Sedgwick district court, division No. 1. Opinion filed June 8, 1912. Affirmed.

*J. D. Houston,* and *C. H. Brooks,* for the appellant; *Frederick H. Calkins,* of counsel.

*S. B. Amidon, D. M. Dale, Jean Madalene,* and *Ben F. Hegler,* for the appellee.

The opinion of the court was delivered by

WEST, J.: Laura L. Forney sued the Fidelity Mutual Life Insurance Company to recover on a policy issued to her former husband, setting out a copy of the instrument and alleging that at the time of his death the policy was in full force and effect and that due proofs were forwarded to the company. She also alleged that after receipt of such proofs the company, through its authorized agents, in writing denied liability. The policy was issued September 1, 1908, and recited that it was in consideration of the application of the insured and the payment in advance of $67 on delivery of the policy and thereafter to the company at its head office upon the 13th day of the month of August of every year during the continuance of the contract. A clause in the contract provided that in the event of any default in payment of premium or obligation given for a premium within the first three years of the policy it could be revived only if the insured should be in good health, upon presentation of a revival contract signed by the insured and upon approval of the same by the president or vice president and medical director, and payment of the arrears of premiums with interest. The answer, in addition to a general denial, alleged that on August 13 preceding the execution of the policy the insured had signed the application and at the same time executed

and delivered to the defendant his note of that date due January 1, 1909, for the first annual premium in the sum of $67, upon which a payment of $5 was made before due; that it was not paid prior to or upon maturity and contained the stipulation that if not paid at maturity the policy should be *ipso facto* null and void without notice to the maker of the note and without any act on the part of the company, and should remain so until restored as provided by its terms. It was alleged that by reason of such default the policy had become void, that on March 8, 1909, the insured had applied for a revival but that the application had not been approved by the president, vice president or medical director, and that the payment of arrears with interest amounting to $44 was at no time paid by or for the insured. Then followed an allegation that the deceased committed suicide and thereby left the company liable only for a sum equal to the premiums paid with interest. The copy of the note set out showed that it was executed to Arthur C. Harrover. The reply was a general denial, followed by a verified special denial of the writings pleaded in the second defense and their execution. The payee of the note, Arthur C. Harrover, was manager for the company, soliciting applications and collecting premiums, his duties not including the issuing of policies.

The testimony showed that the note with a credit of $5 indorsed was forwarded to the company, the policy with a receipt was sent to the agent and the policy was by him delivered to the insured, but the receipt, which contained a clause similar to the one quoted touching a lapse for nonpayment, was not delivered until the next March. The note was returned to the agent for collection, but the insured being unable to meet it it was returned to the company on February 3. Some time later the agent received a check for $20 which was sent to the company February 18, thus leaving $42 of the note unpaid. On March 1 the company

wrote the agent acknowledging receipt of the check
for $20, stating that the policy had lapsed for nonpay-
ment and that the proper method of procedure was to
have the insured execute a revival contract and for-
ward it to the office with a note to cover the balance of
the annual premium; that if the contract was approved
the policy would be placed in good standing. On
March 8 the revival contract was executed, and on
April 5 the insured gave the agent a check for $21, and
on April 6 another check for the same amount. The
agent, a part of whose duty was to collect premiums,
had this money in process of being mailed to the com-
pany just prior to the death of the insured, which oc-
curred April 15, and after receiving proofs thereof the
assistant solicitor and claim agent of the company hav-
ing charge of death claims and investigations and prepa-
rations of claims for the action of the company came to
Wichita and had an interview with the widow and
other relatives of the deceased, and upon being shown
the two checks last mentioned stated that all question
of doubt was now removed except as to the nature of
the death. After returning to the home office he wrote
a letter to the plaintiff in which he stated among other
things that:

"Mr. Harrover was informed that the policy re-
quired a proper revival application to be submitted
before the revival of the policy could be considered,
and the balance of the note, namely, $42 either paid
or otherwise arranged for subject to the approval of
the officers of the Company. Subsequently a revival
application was received from him, signed by Mr.
Forney. . . . The balance of $42 was, however,
not in any way provided for, and Mr. Harrover was
immediately notified that the application could not be
considered until such was done. At my last interview
with you early this month you showed me two checks,
apparently signed by Mr. Forney, for $21 each, to the
order of A. C. Harrover, which appeared to have
passed through the bank upon which they were drawn
and been paid, but the amount of such checks was
never received at this office and we had no knowledge

Forney v. Insurance Co.

whatever, prior to the death of Mr. Forney, that such checks had been delivered to Mr. Harrover. Such checks appear to have been dated April 5 and April 6, and the death of Mr. Forney appears to have occurred April 15.

"The terms of the revival contract were not complied with prior to the death of Mr. Forney, and the policy was not revived in accordance with the provisions of such revival contract and was not in force at the time of the death of Mr. Forney. The Company, therefore, is not liable for any sum whatever upon the policy."

Later in the letter he stated that the company believed the death was suicidal and not accidental, and that if the policy had been in force at the time of the death the liability of the company would have been the premiums paid with interest, if the death was due to suicide, "and if you would make no claim against the company beyond such amount the Company would waive the failure to comply with the requirements of the revival contract and accepted the two checks of $21 which you hold, as evidence of the receipt by Mr. Harrover of such amount, and would refund to you such $42, together with the $5 first received, and return you Mr. Forney's check of $20 heretofore referred to, upon surrender by you of the policy properly released."

It appears, therefore, that the note for $67, with the $5 credit thereon, was taken by the company for one year's premium which, if paid, would extend the policy to September 1, 1909. That in fact the balance of the note was paid to the company's agent several days prior to the death of the insured, but the last two payments were not by him remitted to the company, and the revival contract was not approved by the proper officers.

The jury found that the revival contract was approved by waiver and that the death was not suicidal.

The defendant insists that the question of waiver was improperly submitted because not within the

26—87 Kan.

issues formed by the pleadings, and also because it was unsupported by the evidence. As the petition did not allege that the insured had performed all the conditions of the contract but simply that the policy was in full force at his death, the logical effect of such allegations would be that the premiums had been paid or their nonpayment had been waived. A motion might have required the plaintiff to set forth whether it was in full force by reason of payment or because of waiver (*Benefit Association v. Wood*, 78 Kan. 812, 98 Pac. 219), but no such motion was made. No application appears to have been made for further time on account of injecting this issue into the case, nothing appears from the record to indicate that the company was injuriously surprised thereby or deprived of the use of any desired or necessary evidence; and as the case was fully tried and all the testimony submitted, the error, if any, does not appear to have been materially prejudicial.

However, we do not regard the question as one of waiver only, but mainly one of liability affected in only a small degree by waiver. Payment for an entire year's insurance had been completed several days before the death occurred. No question is made as to health or qualifications for reinstatement, and the letters already referred to indicate that payment alone by way of cash or note was required to insure the approval of his application. Can the mere fact that the company was not aware that payment had been made to its agent be sufficient to relieve it of liability? Certainly after acquiring full knowledge of the situation the statement of the agent that there was nothing left but the question of suicide was a very natural one, and we think it merely voiced the condition as the law fixed it at the time, for nothing remained but the mere formal approval of the application and to that the insured was manifestly entitled. It will be observed that there was no intimation or suggestion on the part of the company

after having ascertained that full payment had been made that it would refuse to approve the application for reinstatement.  On the contrary, after having told the beneficiary that this question was out of the case, the agent wrote to her that Mr. Harrover had been notified that the application could not be considered until the balance of $42 was provided for, which is a plain intimation that there had been at no time any disposition to refuse approval except for nonpayment. In the case of *Insurance Co. v. Johnson,* 47 Kan. 1, 27 Pac. 100, it was said:

"Undoubtedly an agent clothed with the authority or apparent authority of the agent in this case may waive the conditions and stipulations in the policy, and might also by his knowledge and acts estop the company from availing itself of a breach of condition or a forfeiture in certain cases."    (p. 4.)

There the agent was an adjuster who, it was alleged, agreed to pay the loss if a deduction of $112 was made.  Here the agent was assistant solicitor and claim attorney of the company and had charge of the death claims and investigations and preparations of claims for the company, and in his correspondence assumed to speak for the company.  It was held in *Insurance Co. v. Ferguson,* 78 Kan. 791, 98 Pac. 231, that a refusal to pay based entirely upon a forfeiture caused by a certain thing bars the company from relying on a forfeiture on other grounds of which it had knowledge when the refusal was made.

"The acceptance by an insurance company of payment of a premium or premium note after maturity is in general a waiver of a forfeiture of the policy caused by the prior default."    (*Duncan v. Missouri State Life Ins. Co.,* 160 Fed. 646, headnote, ¶ 1.)

In *United Workmen v. Smith,* 76 Kan. 509, 92 Pac. 710, it was said that in a case of doubtful interpretation of by-laws that view would be favored which preserved the beneficiary's rights.

"Especially should this be so where the insured paid

the delinquent dues upon request and did everything which devolved upon him to do." (p. 513.)

Numerous authorities are cited as to the binding character of certain clauses of the contract, but we think the facts of the case sufficiently show that the jury reached the proper verdict upon abundant testimony, conceding the validity of such clauses. It appears, at least by strong inference, that the reason why the revival contract was not approved was that the agent did not remit the last two payments. This was not the fault of the insured, and the company rather than his beneficiary should be held responsible for such failure.

Companies issuing policies and certificates prescribe the terms of their own contracts, select their own agents, and secure patronage on the theory that those insured or their families are to be benefited, the inducements and assurances in these respects not usually being characterized by paucity or modesty. In case of actual payment followed by actual loss, liability should not be shirked or escaped save upon clear lawful grounds.

The record does not disclose such grounds and the judgment is affirmed.