[L. A. No. 17922.   In Bank.—Sept. 24, 1941.]

LAWRENCE KENNEDY, as Guardian, etc., Appellant, v. OCCIDENTAL LIFE INSURANCE COMPANY (a Corporation), Respondent.

L. M. Linneman and Lawrence Kennedy for Appellant.

W. M. Conley, Philip Conley, Matthew Conley and Conley, Conley & Conley for Respondent.

GIBSON, C. J.—This appeal was taken by plaintiff from a judgment entered in favor of defendant, after a directed verdict.

On April 25, 1935, Archibald Reid Van Antwerp took out a five-year, convertible, non-participating, term policy of insurance with defendant, for the sum of $5000, payable to his wife, if living, otherwise to his son. The policy provided for quarterly premiums of $21.50, and for a period of thirty-one days grace before lapsing. All payments were made up to and including the quarterly premium which fell due on October 25, 1938, but the premium falling due on January 25, 1939, was not then paid. The defendant notified the insured that the thirty-one day grace period would expire February 25, 1939. On March 21, 1939, the insurance agent who had secured the policy called upon the insured and prepared an application and health certificate for reinstatement of the policy. The evidence is in conflict as to whether it was signed by the insured on that day, or on March 31, 1939. The insured said that he would not have the money to pay the premium until about April 1 and the agent agreed to advance it for him. Again there is a conflict in the evidence as to whether this understanding was reached on March 21,

or March 31, 1939. On March 31, 1939, the agent drew his check in favor of the defendant insurance company, covering several payments including the premium due from the insured, and left it with the application for reinstatement at the Fresno office of the defendant at about 4 p. m. of that day. They were mailed to the head office at Los Angeles between 4:30 and 5 p. m. the same day and were received in Los Angeles the morning of April 1, 1939.

Van Antwerp was found dead lying on his bed partially clothed in the early morning of April 1, 1939. He was last seen alive at 8 p. m. the evening before and when found had been dead for several hours. He was survived by both beneficiaries under the policy.

Defendant tendered its check to Mrs. Van Antwerp for refund of the premium forwarded March 31, 1939. She died August 31, 1939, without accepting the check, and Lawrence Kennedy, as the administrator of her estate and guardian of the minor son, instituted this suit to recover the face amount of the policy. At the close of the evidence, defendant's motion for a directed verdict was granted and judgment was entered accordingly.

The provision of the policy with reference to reinstatement reads as follows: "Should this Policy lapse by reason of any default, it may be reinstated at any time within five years from date of default, upon the Insured furnishing evidence of insurability satisfactory to the Company, and upon payment of all overdue premiums, and upon payment or reinstatement of any indebtedness under the Policy at the date of default, with interest on such overdue premiums and indebtedness at a rate not to exceed six per cent. per annum from date of default."

The policy also provided: "Premiums must be paid at the Home Office of the Company, unless otherwise provided, and in any case only in exchange for an official receipt signed by the Secretary and countersigned by the person to whom payment is made."

The application for reinstatement signed by the insured contained a provision that "in no event shall the same become effective unless and until this application and certificate is approved at the Home Office of the Company and the full amount due is paid during the lifetime and good health of the Insured."

Plaintiff contends that the right to reinstatement is a contractual right and that when the insured has complied with the requirements for reinstatement set forth in his policy, including the furnishing of satisfactory evidence of insurability and the payment of premiums, the insurer may not escape liability because the insured has died before it acted upon the application for reinstatement. The validity of this contention can be determined only by a careful analysis of the manner in which a reinstatement clause such as the one here involved affects rights and obligations of the parties to an insurance contract.

Courts are not in agreement as to the legal effect of reinstatement clauses in insurance policies. Some courts have held that an application for reinstatement of a lapsed policy constitutes an offer to enter into a new contract which must be accepted by the insurer before any contract exists between the parties. (*Foley* v. *New World Life Ins. Co.*, 185 Wash. 89 [52 Pac. (2d) 1264, 105 A. L. R. 473]; *Broughton* v. *Equitable Life Assurance Soc.*, 71 Fed. (2d) 821, 823; *Mac-Donald* v. *Metropolitan Life Ins. Co.*, 304 Pa. 213 [155 Atl. 491, 77 A. L. R. 353]; cf. *Tatum* v. *Guardian Life Ins. Co.*, 75 Fed. (2d) 476 [98 A. L. R. 341]; 77 A. L. R. 357; 98 A. L. R. 345.) Under this theory the insurer's agreement to waive the lapsing of the policy will be treated as consideration for the agreement of the insured to be bound by any new terms imposed in the application for reinstatement (*Foley* v. *New World Life Ins. Co., supra*) and no recovery may be had for any loss occurring before the insurer has accepted the application for reinstatement, either expressly or, perhaps, by allowing an unreasonable time to lapse without acting thereon. (See *Broughton* v. *Equitable Life Assurance Soc., supra; Foley* v. *New World Life Ins. Co., supra.*)

We are of the opinion, however, that reinstatement under a policy such as is present in this case does not involve the formation of a new contract. By the terms of the policy the insured is given a right to reinstatement after lapse upon compliance with certain conditions. During the period in which reinstatement is possible the policy is not void but merely suspended. The right to revive the policy by reinstatement is a valuable contractual right, the consideration for which is found in the premiums paid and to be paid

under the original policy, and the insurer has no arbitrary or discretionary right to refuse reinstatement if all the conditions therefor have been complied with. These views are supported by the weight of authority. (*Rothschild* v. *New York Life Ins. Co.,* 106 Pa. Super. Ct. 554 [162. Atl. 463]; *Mutual Life Ins. Co.* v. *Lovejoy,* 203 Ala. 452 [83 So. 591]; *Officer* v. *New York Life Ins. Co.,* 73 Colo. 495 [216 Pac. 253]; *Union Central Life Ins. Co.* v. *Merrell,* 52 Ga. App. 831 [184 S. E. 655]; *Muckler* v. *Guarantee Fund Life Assn.,* 50 S. D. 140 [208 N. W. 797]; *Bowie* v. *Bankers Life Co.,* 105 Fed. (2d) 806, 808; *Hogue* v. *Supreme Liberty Life Ins. Co.,* 59 Ohio App. 409 [18 N. E. (2d) 503]; *Froehler* v. *North American Life Ins. Co.,* 374 Ill. 17 [27 N. E. (2d) 833]; *Illinois Bankers Life Assn.* v. *Palmer,* 176 Okla. 514 [56 Pac. (2d) 370]; *Republic Life Ins. Co.* v. *Craige,* 186 Okla. 692 [100 Pac. (2d) 281]; *Burchfield* v. *Home Benefit Assn.,* (Tex. Civ. App.) 73 S. W. (2d) 559, 561; 7 Temple Law Q. 374; 98 A. L. R. 345; 3 Appleman, Insurance Law and Practice, 609, 612, 654.)

Applying this theory of the nature of reinstatement, we hold that the provision in the application for reinstatement that it should not be effective until approved at the home office of the company during the lifetime of the insured cannot vary the terms of the original policy. The insured had a contractual right to be reinstated under the terms of his policy and any agreement to impose different terms is unsupported by consideration. (*Illinois Bankers Life Assn.* v. *Palmer, supra; Rothschild* v. *N. Y. Life Ins. Co., supra; Hogue* v. *Supreme Liberty Life Ins. Co., supra;* 3 Appleman, *op. cit. supra,* 651, 652.)

The further question as to whether the insured had complied with all the conditions for reinstatement imposed by the original policy before his death is more difficult. It has been held in a number of cases containing similar reinstatement provisions that where the insured within the authorized time furnishes proof of insurability which is not open to valid objection in form or substance and tenders all premiums in arrears plus interest thereon, and where in fact the insured is in good health at the time he makes application for reinstatement, he has at that time fulfilled all the conditions for reinstatement and his subsequent death, arising from conditions not involved in his proof of in-

surability, will not prevent recovery under the policy, even though the insurer has not acted upon his application prior to his death. (*Officer* v. *N. Y. Life Ins. Co., supra; Prudential Ins. Co.* v. *Union Trust Co.,* 56 Ind. App. 418 [105 N. E. 505] ; *Bowie* v. *Bankers Life Co., supra; Parker* v. *California State Life Ins. Co.,* 85 Utah 595 [40 Pac. (2d) 175] ; *Jackson* v. *Northwestern Mutual Relief Assn.,* 78 Wis. 463 [47 N. W. 733] ; cf. *Republic Life Ins. Co.* v. *Craige, supra; Forney* v. *Fidelity Mut. Life Ins. Co.,* 87 Kan. 397 [124 Pac. 406] ; *Wichman* v. *Metropolitan Life Ins. Co.,* 120 Mo. App. 51 [96 S. W. 695] ; *Burchfield* v. *Home Benefit Assn., supra;* 105 A. L. R. 479.) The facts in *Officer* v. *N. Y. Life Ins. Co., supra,* are almost identical with those in the present case. The policy provided for reinstatement on "written application to the home office with evidence of insurability satisfactory to the company" and payment of overdue premiums with interest. The policy also provided: "Premiums are due and payable at the home office, unless otherwise agreed in writing." One of the terms of the reinstatement application was that the policy was not to be reinstated until acted on by the company at its home office. The application and premium payment were delivered to the branch office of the company in Denver on October 1. The insured died October 4, before the application reached the home office on October 5. The court said: " . . . we hold that the policy was reinstated, and that its restoration related back to the time when the application was delivered to the branch office in Denver. The fact that the insured died, after he had fully complied with the conditions of his contract, furnished no ground for a refusal by defendant to restore the policy."

While there is authority to the contrary (see *Foley* v. *New World Life Ins. Co., supra; Broughton* v. *Equitable Life Assurance Soc., supra*), even in states which do not follow the new contract theory (e. g., *Hogue* v. *Supreme Liberty Life Ins. Co., supra,* holding that the insurer has a reasonable time within which to approve the reinstatement application; 105 A. L. R. 484), we believe that the better rule is expressed in the cases just cited. The right to reinstatement is given in the original policy and was bought and paid for by the insured. When he has submitted evidence of insurability which would be satisfactory to a reasonable

person and has paid all the premiums which he would have paid even though the policy had not lapsed, there is no valid reason why his policy should remain suspended while the application goes through the insurer's routine for approval. Of course, if at the time the application was submitted the insurer would have been justified in rejecting the application, or in requiring further proof before reinstating the policy, it may do so even though the death of the insured has intervened. (*Muckler* v. *Guarantee Fund Life Assn., supra.*) This was the situation in most of the cases cited by the respondent. (*Exchange Trust Co.* v. *Capitol Life Ins. Co.,* 49 Fed. (2d) 133, insured failed to disclose a serious illness at the time of applying for reinstatement; *Peters* v. *Colonial Life Ins. Co.,* 128 Pa. Super. Ct. 21 [193 Atl. 460], insured failed to fill out blanks in application; *Fishman* v. *Eureka-Maryland Assur. Corp.,* 120 Pa. Super. Ct. 490 [183 Atl. 98], insured had not tendered all overdue premiums; *Conway* v. *Minnesota Mut. Life Ins. Co.,* 62 Wash. 49 [112 Pac. 1106, 40 L. R. A. (N. S.) 148], evidence of undue consumption of alcohol by insured at time of application.)

In this case no question was raised in the trial court or in the briefs on appeal as to the sufficiency of the evidence of insurability furnished by the insured; no contention was made that the correct amount of overdue premium was not submitted; and there was no suggestion of fraud or misrepresentation on the part of the insured. The application and the money were in the hands of the Fresno office of the company and in the mails on the way to the home office before the death of the insured. The insured had done all that was required on his part to reinstate the policy and we see no reason to imply the additional condition precedent to reinstatement contended for by the defendant that the application and the premium should have reached the home office of the defendant before the death of the insured. In a number of the cases cited recovery was allowed where the insured died while the application for reinstatement was in the mails. (*Officer* v. *N. Y. Life Ins. Co., supra; Prudential Ins. Co.* v. *Union Trust Co., supra; Parker* v. *Cal. State Life Ins. Co., supra; Jackson* v. *Northwest Mut. Relief Assn., supra.*)

Some cases have suggested that recovery will be allowed only if the death of the insured is accidental and

in no way relating to his insurability or only if it arises from causes subsequent to the filing of the application. (*Bowie* v. *Bankers Life Co., supra; Burchfield* v. *Home Benefit Assn., supra.*) On the other hand, it has recently been held that recovery will be allowed if evidence of good health is given honestly and in good faith by the insured, even though in fact he is suffering from a hidden disease. In *Froehler* v. *North American Life Ins. Co., supra*, the insured made application for reinstatement on May 4, stating that he was then in good health. A week or so later he consulted a doctor and on May 19 died from the effects of an operation for a brain tumor. The insurer, on hearing that the operation was to be performed, notified the insured on May 19 that his application for reinstatement had been refused because the evidence of insurability was not satisfactory. The court allowed a recovery under the policy, stating: ''The record shows without dispute that the insured had furnished all the evidence he had been asked to furnish and that that evidence was entirely satisfactory. The jury found it was honestly given and the situation is no different than if the insured had been struck by lightning or hit by a truck on May 15, 17, or 19, 1933.'' While we need not now decide which is the correct rule since there is nothing in the evidence here to show that the death of the insured was related in any way to his insurability at the time of submitting his application for reinstatement, we are inclined to the view of the Illinois Supreme Court in the Froehler case. When the insured has paid all overdue premiums with interest and has furnished in good faith and satisfactory form all the evidence of insurability required by the insurer, the original policy is revived and the insurer having received all he bargained for in that policy, should be liable for any loss thereafter occurring to the same extent as if the policy had never lapsed. (See 9 Fordham L. Rev. 430, 432–434.)

The case principally relied upon by the defendant to sustain the judgment of the trial court, *Greenberg* v. *Continental Casualty Co.*, 24 Cal. App. (2d) 506 [75 Pac. (2d) 644], is not, properly interpreted, contrary to our conclusions herein expressed. In that case plaintiff sued for damages for refusal of the insurer to reinstate a noncancellable policy of accident and health insurance. The application for reinstatement, showing large insurance policies in other com-

panies, was rejected by the company because it was against its business practice to participate in such insurance if the applicant was already insured to a certain amount in other companies. The court held that because of these outside factors of insurance, the satisfactory quality of the evidence of insurability involved more than mere good health of the applicant and the application was properly rejected. This reason for denial of reinstatement, it should be noted, existed just as much at the time of signing the application as it did when the application reached the home office. ▮ However the statement of the court, in the Greenberg case, that what shall constitute "satisfactory evidence" of insurability "is purely a private matter addressed to the discretion of those officers of the company charged with the responsibility of determining such question, and is in no sense that judicial discretion which appellate courts have the authority to review," must be disapproved. The overwhelming weight of authority is to the effect that an agreement to reinstate an insurance policy upon "satisfactory evidence" of insurability does not give the insurer the power to act arbitrarily or capriciously, but that evidence which would be satisfactory to a reasonable insurer is all that is required. (*Thompson* v. *Postal Life Ins. Co.,* 226 N. Y. 363 [123 N. E. 750]; *Bowie* v. *Bankers Life Co., supra; Haselden* v. *Standard Mut. Life Assn.,* 190 S. C. 1 [1 S. E. (2d) 924, 926]; *Illinois Bankers Life Assn.* v. *Palmer, supra;* 3 Appleman, *op. cit. supra,* 661, 662.)

The judgment is reversed.

Curtis, J., Carter, J., Traynor, J., and Pullen, J., *pro tem.,* concurred. Shenk, J., being disqualified, did not participate.

Respondent's petition for a rehearing was denied October 23, 1941.