## STARNES v. OCCIDENTAL LIFE INS. CO. OF CALIFORNIA.

### No. 1009.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 15, 1951.

Decided Feb. 12, 1951.

Robert H. McNeill, Washington, D. C., T. Bruce Fuller, Washington, D. C., on the brief, for appellant.

7. Municipal Court rule 49 (b), patterned after Fed.Rules Civ.Proc. rule 54 (c), 28 U.S.C.A. Truth Seeker Co. v. Durning, 2 Cir., 147 F.2d 54.

Louis M. Denit, Washington, D. C., P. Baxter Davis, Thomas S. Jackson, and A. Leckie Cox, all of Washington, D. C., on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD, and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

This case has been tried four times [1] and appealed twice. For a proper understanding of the present issues, it becomes necessary to refer again to some of the testimony which was before us on the former appeal. Lame Elk White Horse had sued [2] on a health and accident policy which had been issued to him by defendant company on May 17, 1946, and which had lapsed for nonpayment of premiums on September 1, 1946. In March 1947, he wrote a letter to the company inquiring what payments would be necessary to put the policy back in force. The company responded through its agent Rodgers who wrote to plaintiff and enclosed application blanks for his signature. Plaintiff completed the application and there was evidence that he mailed it to Rodgers in California, together with three months' premiums, from Kings Mountain, North Carolina, on March 29, 1947. Plaintiff was in an automobile accident on April 2, 1947. According to the testimony and records of Rodgers, he received the money and applications on April 14 and transmitted both to his company. He also mailed to plaintiff a "binding receipt," which was dated April 14, 1947 and which we shall discuss later in this opinion.

The trial court found that there was a binding contract of insurance in existence prior to plaintiff's accident and found in his favor, but limited the benefits awarded to a twelve months' period. Defendant appealed to this court and plaintiff filed a cross-appeal challenging the correctness of the ruling confining the award to twelve months' benefits. We reversed and ordered a new trial. We ruled among other things that there "was no basis in the record for holding that there was an offer and acceptance prior to the accident." We said, "If the mailing of the applications and premium constituted an acceptance of an offer then the offer must have been contained in Rodgers' letter." This referred to a letter which Rodgers had sent plaintiff with the application blanks. Plaintiff said he had lost the letter and we ruled that he should have been permitted to testify to its contents.

We held that defendant had no arbitrary right to refuse to insure plaintiff and that the burden at the new trial would be on defendant to show any conditions which would entitle it to withhold coverage under the policy. We also said that if such conditions existed, then under the terms of the "binding receipt" the plaintiff had no right to claim his insurance was in force unless "date of payment" as specified in the receipt antedated the accident on April 2, 1950.

These were among the rulings on which we based our reversal and ordered a new trial on all issues.[3] In conformity with our judgment the case was retried on the testimony of the insured and that of the agent Rodgers, together with depositions and a number of exhibits. In a written memorandum the trial judge ordered a finding for defendant, and it is on plaintiff's second appeal that the case is now before us.

In his memorandum the trial judge specifically found that "the letter from the agent Rodgers did *not* contain an offer to reinstate the insurance policy which had lapsed for a period of months but merely

1. The judge who conducted the first trial died before the case was completed (or before the case was decided). It was retried before another judge and taken under advisement, but before decision plaintiff took a voluntary nonsuit. The third trial resulted in a judgment which was brought here and reversed. It is the judgment resulting from the fourth trial which is now before us.

2. Later his wife, Nina J. Starnes, was appointed ancillary committee and as such was substituted as party plaintiff; but for convenience we refer to the insured as plaintiff.

3. Occidental Life Ins. Co. v. Lame Elk White Horse, D.C.Mun.App., 74 A.2d 435.

transmitted two blank applications, both of which were to be signed, and one was to be filled out by the plaintiff's ward, and then these forms were to be submitted to the Home Office of the insurance company, together with the premium payment, for its determination as to whether or not a new policy of insurance should be issued to the plaintiff's ward or the old policy should be reinstated." This finding was supported by substantial, though conflicting evidence. The insured said that Rodgers' letter (the lost letter referred to above), written to him in response to his inquiry, told him "to get those applications in the mail with the quarterly premium before the first day of April and my insurance policy would be in force as of the first day of April." But Rodgers' version of the letter was quite different. He said, "I sent him two applications, instructed him to complete one in its entirety, and send the other signed, inasmuch as there was doubt as to whether the company would reinstate the policy or write a new one, due to the fact that the four-months period or three-months period had been lapsed since—that is, had elapsed since the lapse of the policy, and it would be up to the company whether they would reinstate the policy or write him a new application." He also said, "I explained to him that due to the fact that it had been more than three months since he had lapsed the policy there was a doubt whether the company would reinstate the contract, and for him to complete the two applications, one application in its entirety, the second, also, and if and when the company would approve the application the policy would be issued."

█ From these conflicting versions, the trial judge was justified in ruling as he did that the disputed letter of Rodgers contained no offer to reinstate the policy but was a mere transmission of an application for reinstatement which the home office might or might not approve.

Next we consider the legal effect to be given the receipt under the facts as presented. The receipt reads:

"Binding Receipt

"Occidental Life Insurance Company of California, Los Angeles

No. 335456

"Received of Lame Elk Whitehorse the sum of $27.25 on account of quarterly premium on the proposed insurance in accordance with the application bearing the same number as this receipt. This payment is made and accepted subject to the following conditions:

"If, on the date of this payment, the applicant, in the opinion of the Company's authorized officers in Los Angeles, was insurable and acceptable as a standard risk under its rules and practices for the policy or policies exactly as applied for, the policy or policies will be dated and made effective as of the date of this payment in accordance with its or their terms; otherwise there shall be no liability on the part of the Company, except to return this payment to the applicant upon surrender of this receipt.

"This receipt is subject to the condition that any check or draft remitted in exchange for this receipt shall be honored upon first presentation through usual banking facilities.

"Dated at Elmonte Calif., on April 14, 1947 10:00 A.M.

Time         Place         Date

"/s/ Ray L. Rodgers,
                    Authorized Agent.

"This receipt must not be detached unless a binding payment is made."

█ Such receipts should be interpreted so as to give them the effect the parties meant them to have.[4] The trial court made no specific finding that the company had proved that plaintiff was not insurable, but rested its decision on the more fundamental finding that there was no contract liability in the case. We note however that there was evidence in the record that plaintiff had earlier suffered an attack of coronary thrombosis and had also been diagnosed as having angina. On that evidence alone the company might have found plaintiff to be uninsurable. Such finding could not be

4. 2 A.L.R.2d 943.

called arbitrary under the terms of the receipt which, as we have seen, gave the company through its authorized officers in Los Angeles the right to decide whether plaintiff "was insurable and acceptable as a standard risk."

■ But even in the absence of a finding of uninsurability, plaintiff's right to recover rested on the interpretation of the words "date of this payment," for to bind the company the payment must have preceded the accident. The trial judge found that the "meaning in fact of the words 'date of this payment' is date of the receipt" of the payment (April 14) and not the date of depositing the payment in the mail (March 29). As we said in the earlier appeal, it was proper to receive evidence to explain the ambiguity of the term.[5]

■■ The uncontradicted evidence was that the premium payment and application for reinstatement did not reach Rodgers until April 14, twelve days after the accident on which plaintiff bases his claim. This the trial judge found was the date of payment, thus resolving one of the factual issues which we said should be determined on the retrial. Of course it is true that Rodgers in his note to the insured told him "this will pay your insurance up to July 1, 1947," though he added the qualifying sentence, "I will send your reinstated policy to you just as soon as it is issued." But he said he was mistaken about this because this type of policy is issued always on the first day of a month, and if it had been issued, it would not have been until the first of the month following the date of the receipt, and also because he had no authority in any event to reinstate the policy. In this connection we note that the following testimony was developed in direct questioning by the Court:

"Q. Mr. Rodgers, as a matter of fact, did you have authority from the company to reinstate policies without their approval? A. No, sir, I did not, Your Honor.

"Q. No matter when the money had been received, April first, or April 14th, or any time from the first of April would you have had the authority to either reinstate the policy or to issue a new policy? A. No, sir."

Believing Rodgers, as he had a right to do, the trial judge was not in error in holding that Rodgers was without authority in fact to make an offer to reinstate the policy so as to bind the company. The evidence for defendant was clear that there had been no offer of reinstatement, no payment, no acceptance of payment, no reinstatement of the policy, and consequently no coverage on April 2, the date of the accident. As we said on the earlier appeal we do not hold that Rodgers could contradict or vary the terms of the binding receipt; but it was clearly proper for him to explain his own interpretation which he had written on the back of the receipt, and otherwise to clarify the ambiguity in the language of the receipt itself, and the confusion surrounding the date of the tendered payment. In the light of all we have recited we cannot say that the trial court was wrong in holding that the "date of this payment" referred to in the "binding receipt" was *after* the automobile accident of April 2. The evidence would clearly justify a holding that the payment was not received by Rodgers until April 14. That being so and the receipt binding the company to reinstate the policy (or issue a new one) only if on the date of payment the insured was acceptable as a standard risk, it seems to us that the company was well within its rights in refusing to extend coverage to one who had already been in an accident.

Appellant argues that date of payment was March 29, 1947, the date the insured sent his premium and application by ordinary mail from North Carolina. Principally he bases that contention on a California decision, we having ruled that California law governs this litigation. The case on which he relies[6] is Kennedy v. Occidental

5. Occidental Life Ins. Co. v. Lame Elk White Horse, D.C.Mun.App., 74 A.2d 435. See also Keene v. Aetna Life Ins. Co., D.C., 213 F. 893.

6. He also cites Officer v. New York Life Ins. Co., 73 Colo. 495, 216 P. 253; Prudential Ins. Co. of America v. Union Trust Co., 56 Ind.App. 418, 105 N.E.

Life Ins. Co., 18 Cal.2d 627, 117 P.2d 3. But we do not understand that case to hold that the mere dropping in the mail of a premium payment and application for reinstatement automatically revives a lapsed policy as of the time of such mailing. Nor is there binding authority elsewhere to that effect. The Federal rule is to the contrary. Taylor v. Mutual Ben. Health & Accident Ass'n, 8 Cir., 133 F.2d 279. In that decision the court referred to the Kennedy case and decisions like it and pointed out as we do that they are readily distinguishable from cases like the one before us. We note that in the Kennedy case the reinstatement clause required proof of insurability within five years and payment of all back premiums with interest as a condition to reinstatement. Here the clause requires "acceptance" of the premium prior to reinstatement. Nor do we think there were any provisions in the policy itself, nor any offer to reinstate or agreement to reinstate, from which it could be held that date of mailing was date of payment. We think it would be highly unreasonable to hold that the company would be bound anew on a lapsed policy at any time that plaintiff dropped into the mails one premium payment and an application for insurance or reinstatement.

It is true that the California court said that during the period in which reinstatement is possible a policy is not void but merely suspended; that the right to revive a policy by reinstatement is contractual, the consideration being founded on the premiums paid and to be paid under the original policy; and that the insurer has no right to refuse reinstatement if all the conditions have been complied with. But it must be noted that in that case the premium money was already in the hands of the agent [7] and had been left at the Fresno office of the company, and the "mailing" was by a company employee from the company's Fresno office to its own head office at Los Angeles. It was while the premium and application

were thus in the mail that the insured died. It was on those facts that the court said, "there is no valid reason why his policy should remain suspended while the application goes through the insurer's routine for approval." [18 Cal.2d 627, 117 P.2d 6.] It requires no elaboration to show the factual and legal difference between that case and this on the question of mailing. There, before the insured died his premium had been paid and received by the company and was being processed in its own channels and within its own organization. Here, on the date of the accident the premium and application were still in the mails and not destined to reach the agent or anyone connected with the company for some twelve days thereafter. We conclude that there is nothing in the Kennedy case which requires a finding for plaintiff.

Finally we note that though we ordered "a retrial on all issues," including the question of liability and the extent of such liability if any, yet there is nothing in the record to show that any evidence was offered as to what injuries plaintiff suffered and what if any disabilities resulted. There is only plaintiff's statement that he was injured on April 2. Thus even if liability existed there would be no basis for deciding whether plaintiff had been disabled and if so for how long.

Affirmed.

---

505; Parker v. California State Life Ins. Co., 85 Utah 595, 40 P.2d 175, overruled Gressler v. New York Life Ins. Co., 108 Utah 182, 163 P.2d 324, 164

A.L.R. 1047; Jackson v. Northwest Mut. Relief Ass'n, 78 Wis. 463, 47 N.W. 733.

7. The agent advanced it for the insured, but that is of no consequence.