NORTH AMERICAN COMPANY
FOR LIFE AND HEALTH
INSURANCE, Plaintiff,

v.

Martin RYPINS, Defendant.

No. C 97–3535 MEJ.

United States District Court,
N.D. California.

Dec. 3, 1998.

Robert D. Phillips, Jr., John D. Burnite, Fleming & Phillips, Walnut Creek, CA, for plaintiff.

Ray Bourhis, Alice J. Wolfson, Jill Schlichtmann, Ray, Bourhis & Associates, San Francisco, CA, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY ADJUDICATION

JAMES, United States Magistrate Judge.

Before the Court is Defendant and Counter claimant Martin Rypins' Motion For Partial Summary Adjudication pursuant to Rule 56 of the Federal Rules of Civil Procedure. Having read the moving and opposing papers, and Good Cause Appearing, the Court GRANTS the motion.

### BACKGROUND

In 1983, Patricia Ann Rypins ("Patricia") obtained a one hundred thousand dollar life insurance policy from North American Company for Life and Health Insurance ("the Company") naming her then-husband Martin Rypins ("Defendant") as the sole beneficiary. Defendant paid the premiums. In January of 1986, Defendant and Patricia divorced, and Patricia restored her maiden name of Patricia Ann Prout. In June of 1986, the premiums were not paid and the policy lapsed. After the lapse, the Company sent Patricia a reinstatement application and a statement of health form. Defendant filled out the reinstatement application and accompanying statement of health and signed Patricia's signature as "P. Rypins" on both documents. Defendant submitted the reinstatement application and statement of health to the Company with payment for the past due premiums, plus interest. The Company accepted the payment and reinstated the policy.

In 1988, Patricia was diagnosed with Multiple Sclerosis. In 1991, Defendant called the Company and inquired about the status of the policy. The policy file contains a notation that Defendant called in 1991 and an

agent informed him that the policy was in effect and that Defendant was the beneficiary. Patricia died on September 1, 1996. From the time of the reinstatement in 1986, to Patricia's death in 1996, Defendant paid the required premiums. On September 9, 1996, Defendant submitted a claim for the one hundred thousand dollars provided under the policy. The Company denied his claim because Patricia did not sign the reinstatement application or statement of health. Defendant admits that he signed Patricia's name on the reinstatement application and statement of health, but claims he did so with her authorization.

Defendant now moves for partial summary adjudication on the issue of whether California law governing incontestability clauses precludes the Company from denying his claim.

## DISCUSSION

### A. *Legal Standard for Summary Judgment*

Summary judgment may be granted when, viewed in the light most favorable to the nonmoving party, *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Intel Corp. v. Hartford Acc. and Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991); *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir.1987); *Diaz v. American Tel. & Tel.,* 752 F.2d 1356, 1359 n. 1 (9th Cir.1985), "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.*

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. The burden then shifts to the nonmoving party to set forth by affidavit or as otherwise provided by Rule 56, specific facts demonstrating a genuine factual issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. The nonmoving party may not rest upon the mere allegations or denials of his pleadings. Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. Rather, the nonmoving party must produce specific facts, by affidavit or other evidentiary materials contemplated by Rule 56(e), showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. If the evidence is merely colorable or is not significantly probative as to any material fact claimed to be disputed, summary judgment should be granted. *Eisenberg v. Insurance Co. of North Am.,* 815 F.2d 1285, 1288 (9th Cir. 1987); *Steckl,* 703 F.2d at 393 (quoting *Ruffin v. County of Los Angeles,* 607 F.2d 1276, 1280 (9th Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980)). A mere "scintilla" of evidence supporting the nonmoving party's position will not suffice. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. There must be enough of a showing that the jury could reasonably find for the nonmoving party. *Id.* 477 U.S. at 256, 106 S.Ct. 2505.

### B. *Legal Analysis*

#### 1. *Summary of Positions*

Defendant argues that California law governing incontestability clauses prevents the Company from denying his claim. The Company argues that because there was no mutual consent between Patricia and the Company in procuring the reinstatement, the policy is *void ab initio* (i.e., void from the beginning and thus the incontestability clause is ineffective). There is an issue of fact as to whether Defendant reinstated the policy with Patri-

cia's authorization. However, that issue is not triable unless, as a matter of law, a reinstatement procured without mutual consent renders the policy *void ab initio.*

## 2. *Incontestability*

Incontestability is governed by Cal.Ins. Code § 10113.5, which provides:

An individual life insurance policy delivered or issued for delivery in this state shall contain a provision that it is incontestable after it has been in force, during the lifetime of the insured, for a period of not more than two years after its date of issue, except for nonpayment of premiums.

Cal.Ins.Code § 10113.5. Patricia's insurance policy contains an incontestability clause which follows § 10113.5: "Except for the nonpayment of premiums, the policy will be incontestable after it has been in force during the Insured's [Patricia's] lifetime for two years from the policy date." (Exh. B to Rypins Decl.)

As recognized by the California Supreme Court in *Amex Life Assurance Company v. Superior Court,* 14 Cal.4th 1231, 1233, 60 Cal.Rptr.2d 898, 930 P.2d 1264 (1997), "[a]fter the premiums have been paid and the insured has survived for two years, the insurance company may not contest coverage even if the insured committed fraud in applying for the policy." However, an incontestability clause " 'does not apply to a policy which is *void ab initio.* The invocation of an incontestability provision presupposes a basically valid contract.' " *Id.* 14 Cal.4th at 1242, 60 Cal.Rptr.2d 898, 930 P.2d 1264 (quoting *Crump v. Northwestern Nat. Life Ins. Co.,* 236 Cal.App.2d 149, 45 Cal.Rptr. 814 (1965)). In *Amex,* the insurer urged the court to adopt the "imposter defense," which allows the insurer to deny a claim beyond the contestable period where an imposter, claiming to be the named insured, applies for a policy and takes the medical examination. *See id.* 14 Cal.4th at 1239, 60 Cal.Rptr.2d 898, 930 P.2d 1264. The imposter defense recognizes the "rule applicable to contracts generally" that where a person pretends to be someone else and induces another to make a contract, the resulting contract is with the person actually seen and dealt with. *Id.* 14 Cal.4th

at 1239–41, 60 Cal.Rptr.2d 898, 930 P.2d 1264 (citing the two leading imposter defense cases: *Maslin v. Columbian Nat. Life Ins. Co.,* 3 F.Supp. 368 (S.D.N.Y.1932), and *Ludwinska v. John Hancock Mut. Life Ins. Co.,* 317 Pa. 577, 178 A. 28 (1935)) (internal quotations omitted). Because a valid contract does not exist between the insurer and the named insured, the policy is void and the incontestability clause does not apply. *See id.* (holding that "the incontestability clause can rise no higher than the policy; the incontestable clause cannot of itself create the contract") (quoting *Ludwinska,* 178 A. at 30–31) (internal quotations omitted).

In *Ludwinska,* the court allowed an insurer to deny Bertha Ludwinska's claim based on the imposter defense. *See Ludwinska,* 178 A. at 30. There, Bertha, representing herself as her sister, Victoria Ludwinska, applied for an insurance policy naming their mother as the beneficiary. *Id.* Bertha also took the medical examination. *Id.* The *Ludwinska* court held as follows:

"a contractual relation between Victoria and the company never existed.... Where one contracts with an individual face to face and intends to contract with the person before him, the contract, if any, is made with that particular person, regardless of what name he may assume for the transaction and regardless of whether the assumed name actually is the name of a living person with whom the other party was under the impression he was contracting.... [T]here never was a contract concerning the life of Victoria.... What the insurance company really did was to insure Bertha, if it insured anyone. The name affixed to the application does not govern unless the name identifies the human being it purports to .... Insurance companies do not insure names. They insure lives. The name Victoria was not insured."

*Id.* The *Ludwinska* court allowed the insurer to deny the claim despite the fact that the contestability period had run. *See id.*

The *Amex* court did not decide whether to adopt the imposter defense because the facts at bar did not fall within it. *Id.* 14 Cal.4th at 1234, 60 Cal.Rptr.2d 898, 930 P.2d 1264. In *Amex,* an imposter took the medical exami-

nation to hide the fact that Morales, the insured, was HIV positive. *See id.* Unlike *Ludwinska,* however, Morales had applied for the insurance. *See id.* 14 Cal.4th at 1234–35, 60 Cal.Rptr.2d 898, 930 P.2d 1264. The *Amex* court held that the imposter defense was inapplicable because Morales had personally applied for the insurance from the insurer. *Id.* 14 Cal.4th at 1242, 60 Cal. Rptr.2d 898, 930 P.2d 1264. Thus, there was a meeting of the minds as to his identity and a valid contract existed between Morales and the insurer. *Id.* The *Amex* court held that Morales' concealment of his HIV positive status by sending an imposter to take the medical examination was a "fraud similar to other frauds that the incontestability clause clearly covers." *Id.* The Court prevented the insurer from denying the claim based on the insurer's failure to discover Morales' fraud within the two year contestable period. *Id.*

Here, a valid contract was created between Patricia and the Company when the policy first issued in 1983. The parties do not dispute that Patricia personally signed the application and took the medical examination at that time. Like the policy in *Amex,* " '[t]he name affixed to the application [Patricia's] . . . identifies the human being it purports to.' " *Id.* (quoting *Ludwinska,* 178 A. at 31). The Court finds, however, that an issue of fact exists as to whether Defendant signed Patricia's name on the statement of health and the application for reinstatement with her authorization.

■ It is undisputed that Defendant signed the reinstatement application. Viewing the facts and drawing all inferences in favor of the Company, the Court assumes for the purposes of this motion that Patricia did not authorize Defendant to sign her name on the application. The facts of this case would then be analogous to the *Ludwinska* case. If Defendant was not authorized to sign Patricia's name, Defendant, like Bertha Ludwinska, was representing himself as Patricia. The identity of the actor, rather than the name used, determines who is bound by the act. *Ludwinska,* 178 A. at 30. The Company would have insured Defendant, if it had insured anyone. *See Id.* 178 A. at 31. Thus, there may not have been a "meeting of the

minds" between Patricia and the Company with respect to the reinstatement. The Court's decision, therefore, turns on whether this alleged defect in the reinstatement renders the policy *void ab initio.*

### 3. *Reinstatement*

The California Insurance Code provides, in pertinent part, that "[a]n individual life insurance policy, upon reinstatement, may be contested on account of fraud or misrepresentation of facts material to the reinstatement only for the same period following reinstatement, and with the same conditions and exceptions, as the policy provides with respect to contestability after original issuance." Cal.Ins.Code § 10113.5.

The reinstatement provision in Patricia's policy provides:

> The policy may be reinstated within five years after the due date of the first unpaid premium. It cannot be reinstated if the surrender value has been paid or otherwise exhausted or the period of any extended insurance has expired. Reinstatement will be effective when we receive: (a) a written application for reinstatement; (b) evidence of insurability satisfactory to us; (c) payment of all premiums due with interest; and (d) payment or reinstatement of any debt against the policy with interest. Interest at the rate of 6% will be payable to the date of reinstatement.

(Exh. B to Rypins Decl.) Defendant complied with the above conditions of reinstatement. (*See* Exh. B to Rypins Decl.) This is not in dispute. The Company does not dispute that two years had passed after reinstatement, nor does it deny that the required premiums were paid after reinstatement. Rather, the Company contends that Defendant procured the reinstatement without mutual consent and thus is *void ab initio.*

■ The California Supreme Court has held that a reinstatement does not create a new contract. *See Kennedy v. Occidental Life Ins. Co.,* 18 Cal.2d 627, 630–31, 117 P.2d 3 (1941). As the *Kennedy* court explained:

> Some courts have held that an application for reinstatement of a lapsed policy constitutes an offer to enter into a new contract

which must be accepted by the insurer before any contract exists between the parties.... We are of the opinion, however, that reinstatement ... does not involve the formation of a new contract.

*Id.* 18 Cal.2d at 630, 117 P.2d 3. Rather, the right to reinstate the policy "is a valuable contractual right, the consideration for which is found in the premiums paid and to be paid under the original policy." *Id.* Patricia's policy does not terminate upon a lapse in payment, nor does it require the insured to enter into a new contract upon such a lapse. The reinstatement clause prevents the Company from terminating the policy based merely on a lapse in payment. Based on the past paid premiums (and future premiums to be paid), the insured has the right to reinstate his or her policy. Because reinstatement of an insurance policy "does not involve the formation of a new contract," the original policy stands and the reinstatement cannot render the original policy *void ab initio*, that is, void from the beginning. The Court finds the defense inapplicable at reinstatement. Thus, Defendant's actions would constitute fraud or misrepresentation in the procurement of a "contractual right" that the insurance company provided to Patricia for consideration reflected in "the premiums paid and to be paid under the original policy." *See Kennedy,* 18 Cal.2d at 630–31, 117 P.2d 3.

■ Under the terms of the policy and § 10113.5, the Company had two years from the date of the reinstatement to discover any fraud or misrepresentation. The Company did not do so. Section 10113.5 provides that the reinstatement is contestable with the same conditions and exceptions "as the policy *provides* with respect to contestability after original issuance." Cal.Ins.Code § 10113.5 (emphasis added). Thus, the California Legislature has determined that upon reinstatement, contestability is limited to the express provisions set forth in the policy (here, for nonpayment of premiums). Two years has passed from the date of reinstatement and all required premiums have been paid.

Finally, the Court's decision is in keeping with the public policy considerations behind incontestability clauses.

Incontestability clauses have been used by the insurance industry for over on hundred years to encourage persons to purchase life insurance.... Today, these clauses are required by statutes in most states because without them, insurers were apt to deny benefits on the grounds of a pre-existing condition years after a policy had been issued. This left beneficiaries, ... in the untenable position of having to do battle with powerful insurance carriers.... The clauses are designed to require the insurer to investigate and act with reasonable promptness if it wishes to deny liability on the ground of false representation or warranty by the insured. It prevents an insurer from lulling the insured, by inaction, into fancied security during the time when the facts could best be ascertained and proved, only to litigate them belatedly, possibly after the death of the insured.

*Amex,* 14 Cal.4th at 1236, 60 Cal.Rptr.2d 898, 930 P.2d 1264 (1997) (quoting G. Couch, 18 Couch on Insurance § 72.2 at 283–84 (1983)) (internal quotations and citation omitted).

The reinstatement application was submitted to the Company approximately ten years prior to the Company's investigation and denial of Defendant's claim. As the insurer in *Amex,* the Company could have discovered the fraud at the outset, with minimal effort by comparing the signature on the reinstatement application with the original policy or confirming the reinstatement with Patricia. *See Amex,* 14 Cal.4th at 1243, 60 Cal.Rptr.2d 898, 930 P.2d 1264. The Company only investigated the reinstatement after Patricia, the key witness, has died. Moreover, in 1991, Defendant contacted the Company and the Company informed him that the policy was in effect and that he was the beneficiary. In reliance upon this information, Defendant continued to pay the premiums for approximately five years, and the Company accepted them. Again, like the *Amex* insurer, the Company did nothing to protect its interest but collect the premiums until Patricia died. *See Amex,* 14 Cal.4th at 1243, 60 Cal.Rptr.2d 898, 930 P.2d 1264. The premiums were paid from 1983 to September 1996, for approximately 13 years. "Beneficiaries have the right to expect that after the premiums are paid for the specified time, the insurer will

**624**

promptly pay the policy proceeds upon the insured's death." *Id.*

## CONCLUSION

Based on the foregoing reasons, the Court finds that the two-year incontestability clause provided by the policy precludes the Company from denying Defendant the policy benefits owed to him as beneficiary to Patricia Rypin's insurance policy. This partial judgment is established with respect to all causes of action asserted by the parties and trial will be conducted in accordance with this determination.

This case is hereby referred to the Alternative Dispute Resolution Program (ADR) for Mediation as to all remaining causes of action. The Mediation shall occur as soon as possible. ADR will contact the parties to arrange the Mediation. The Company may resubmit its motion for partial summary judgment, filed on November 2, 1998, after the Mediation.

IT IS SO ORDERED.