[No. 24926. Department One. March 21, 1934.]

LINA C. RIVERS *et al.*, *Appellants*, v. NEW YORK LIFE
INSURANCE COMPANY, *Respondent*.[1]

*John L. McGar* and *Richard E. Morris*, for appel-
lants.

*Fred W. Catlett*, for respondent.

MAIN, J.—This action was based upon a life insur-
ance policy. The defendant denied liability upon two
grounds, one of which was that the policy had lapsed,
and had not been reinstated at the time of the death of
the insured. The cause was tried to the court and a
jury, and resulted in a verdict in favor of the plaintiffs
in the sum of one thousand dollars, which was the face

[1]Reported in 30 P. (2d) 663.

value of the policy aside from the double indemnity clause. The defendant moved for judgment notwithstanding the verdict, and also for a new trial. The motion for judgment notwithstanding the verdict was sustained, and a judgment entered in favor of the defendant, except for an $83 item which is not here material. From this judgment, the plaintiffs appeal.

The facts are these: November 20, 1928, the respondent issued to Mae E. Caldwell a policy which provided for the payment, in the event of her death, of the sum of one thousand dollars to the appellants, who were the beneficiaries named. The policy also contained a provision that, in case death resulted from accidental means, there should be double indemnity. The premium provided for was $9.56, payable every three calendar months during the life of the insured. The payments in the sum mentioned becoming due quarterly and the premium due August 20, 1930, not having been paid, the policy lapsed.

November 1, 1930, the insured, then being employed by the Great Western Sugar Company at Lovell, Wyoming, wrote a letter to the Butte, Montana, agency of the respondent company and enclosed a check for $9.56 for the quarterly premium which was in arrears. The Butte agent responded to this letter and enclosed a "form of self health certificate," which contained questions to be answered by the insured, and also noted that fifteen cents additional was necessary as covering premium interest. A stamped return envelope was enclosed, and it was said that, in the meantime, the check which had been received "is being held in our file subject to your order pending receipt of the reinstatement requirements."

November 7, 1930, and prior to nine a. m. of that day, the insured filled in the answers to the questions

in the form of a self health certificate, enclosed the fifteen cents in stamps, and deposited the letter in the mail bag in the offices of the company by which she was employed. Sometime during the forenoon of that day, she left the office complaining of a headache, and reached the home of her sister, where she resided, about noon, remaining there about forty minutes. She then went for a walk to the Shoshone river, distant about one and one-quarter miles from her sister's residence. From that time, she was not seen by anyone until her body was found in the river about nine a. m. on the following morning, or November 8, 1930.

The letter placed in the mail bag reached the Butte agency two days later, on November 10th. On this day, the application was approved by that agency, which had authority to do so, without knowledge of the insured's death two days previous. When the respondent learned that the death had occurred prior to the time that the application had been approved, it rescinded the approval. Thereafter, an action was brought upon the policy, with the result above indicated.

The policy contained a provision to the effect that it could be reinstated

". . . at any time within five years after any default upon written application by the insured and presentation at the home office of evidence of insurability satisfactory to the company . . ."

The form of self health certificate, which was filled out and signed by the insured, contained this provision:

"If the evidence of my insurability is satisfactory to the company, and it has received all sums the policy requires to be paid for reinstatement, then, and not until then, said policy shall be deemed reinstated. . . ."

· The appellants say that the provision in the policy with reference to reinstatement merely provided a condition, and that, when·that was performed by delivery of the application, properly filled out, in the United States mail, the reinstatement operated from that time. The respondent says that, under the provision of the policy for reinstatement and the provision quoted from the application, the policy would not be reinstated until the application was received by the office and an opportunity given to the agent to pass upon the question of whether the evidence of insurability was satisfactory.

There are some cases, notably *Prudential Insurance Co. v. Union Trust Co.,* 56 Ind. App. 418, 105 N. E. 505, and *Officer v. New York Life Insurance Co.,* 73 Colo. 495, 216 Pac. 253, which support the contention of the appellants. The theory of those cases is that the reinstatement takes place when the condition is performed. On the other hand, there are many cases which hold that the reinstatement comes as a result of a contract between the parties by which the insurance company waives the lapse of the policy and reinstates it. The cases of *International Life Ins. Co. v. Mowbray,* 22 Fed. (2d) 952, and *State Mut. Life Ins. Co. v. Rosenberry,* 213 S. W. (Tex. Com. App.) 242, and others that might be cited, are to this effect. This court has, in effect, adopted the latter rule.

In *Houston v. New York Life Ins. Co.,* 159 Wash. 162, 292 Pac. 445, after holding that the statutory provision, which provided that no oral or written misrepresentation or warranty made in the negotiation of a contract or policy of insurance by the insured or in his behalf,

". . . shall be deemed material or defeat or avoid the policy or prevent it attaching, unless such

misrepresentation or warranty is made with the intent to deceive,''

applied to an application for reinstatement, it was said:

''True, the reinstatement of the policy did not constitute the original contract of insurance here in question, but it did constitute a contract to reinstate the lapsed original contract and policy of insurance. It seems clear to us that the application for reinstatement of the policy was made in the negotiation of a contract of insurance, within the meaning of this provision of the statute.''

Under that rule, the reinstatement of the insured's application in the case now before us would not take place until the application had been received by the Butte agency, with an opportunity to pass thereon. Under the contract theory of waiver, the parties had a right to agree in the application that the reinstatement should not take place unless the ''evidence of my insurability is satisfactory to the company.'' As already pointed out, the insured's death had occurred two days prior to the time the application was received by the Butte agency.

There is another reason why the judgment should be sustained, even if it be assumed that the appellant's theory of the law was correct. There is no evidence as to when the application, which she placed in the mail bag in the office of the Great Western Sugar Company on the morning of November 7th, reached the United States mails. Without evidence, it cannot be assumed that the application reached the United States mail prior to the death of the insured.

The judgment will be affirmed.

BEALS, C. J., STEINERT, MILLARD, and MITCHELL, JJ., concur.