[No. 25718. Department One. January 6, 1936.]

FLORENCE C. FOLEY, *Appellant,* v. NEW WORLD LIFE INSURANCE COMPANY, *Respondent.*[1]

*Guy E. Kelly,* for appellant.

*Kahin & Carmody,* for respondent.

[1] Reported in 52 P. (2d) 1264.

STEINERT, J.—Plaintiff brought this action to recover upon two life insurance policies. Trial was had before a jury. At the conclusion of all the evidence, defendant challenged its sufficiency and moved for a directed verdict. The motion was granted. A judgment of dismissal was subsequently entered, from which plaintiff has appealed.

September 2, 1931, respondent issued two policies of insurance upon the life of Oswald D. Foley. The policies each provided that, if any premiums were not paid when due, or within the grace period of one month thereafter, the policies should become null and void. The policies also contained provisions permitting their reinstatement after default in payment of premiums, upon the production of evidence of insurability satisfactory to the company and the payment of all past due premiums.

The insured failed to pay the premiums due September 2, 1933, as a result of which the policies lapsed on October 2 following. One of the company's agents, who was a brother-in-law of the insured, and who had originally procured the insurance for him, advised him to have the policies reinstated. The insured expressed his willingness to have this done and made a verbal request to that effect.

The company thereupon wrote to the insured, under date of October 18, 1933, advising him that it would comply with his request, but that, inasmuch as the policies had lapsed, it would be necessary for him to make written application for reinstatement. The letter was accompanied by a form of application and two renewal premium notes for execution by the insured. The letter stated that, upon receipt of the completed papers, the company would give immediate consideration to restoring the policies to their former standing.

The application for reinstatement contained a long

list of questions to be answered by the insured, touching his insurability, and concluded with a provision reading as follows:

"I FURTHER AGREE that said policy shall not be deemed reinstated by reason of any cash paid for settlement made in connection with this application, or otherwise, unless and until said Company at its Home Office in acting upon the application shall have duly reinstated said policy during my life-time and good health, notice of such reinstatement to be promptly mailed to me. If the Company does not mail to me from its Home Office within thirty days from date of its receipt of this application notice that said policy has been reinstated, then, this application is to be considered declined and the Company is, upon demand with surrender of any receipt given therefor, to return any payment or settlement made in connection with this application."

The insured, after signing the application and renewal premium notes, forwarded them to the office of the respondent, where they were received on Saturday, October 21, at 9:56 a. m. That same day, at about 7:45 p. m., the insured was critically injured in an automobile accident, as the result of which he died at about 7:30 a. m. on the following Monday, October 23, 1933. At the time of the insured's death, the company had not yet reinstated the policies.

The company learned of the accident on Monday morning and immediately suspended further action on the application. When advised that the insured had died, the company rejected the application, and on October 25, 1933, returned it, together with the renewal premium notes, to the appellant, the widow of the insured. The sole ground assigned for the rejection of the application was that the insured was dead. This action is the result of the company's rejection of the application.

The substance of appellant's contention is that she

was entitled to recover upon the policies because of respondent's negligent failure to act upon the application. The argument is that the right to reinstatement is a valuable property right which accrues to the insured upon the original purchase of the policy, and that the insurer cannot arbitrarily or negligently deprive the insured of the benefit of that provision of the contract of insurance. All this may be admitted, with this qualification, however, that such right is conditioned upon the terms of the policy with reference to the privilege of reinstatement.

As already stated, the policies provided that, after default in the payment of any premium, they might be reinstated at any time upon the production of evidence of insurability satisfactory to the company. Also, as previously stated, the application for reinstatement specifically provided that the policies should not be deemed reinstated unless and until the company, in acting upon the application, had duly reinstated the policies during the lifetime and good health of the insured.

 A reinstatement does not take place automatically, immediately upon delivery of the application by the insured to the insurer. To the contrary, the reinstatement comes as a result of a contract between the parties, by which the insurance company waives the lapsing of the policy and reinstates it. Although the application and reinstatement may be considered as made in the negotiation of a contract of insurance, they do not constitute the original contract, but constitute a separate contract to reinstate the original contract, or policy, which has lapsed.

Under the contract theory of waiver, the parties have the right to agree upon the terms on which such waiver shall take place, and to incorporate the terms of their agreement in the application for reinstatement. Under the provisions of the policies and the ap-

plication for reinstatement, adverted to above, a reinstatement did not take place until the application had been received by the company with an opportunity to pass thereon. These several principles were clearly and definitely enunciated in the case of *Rivers v. New York Life Ins. Co.*, 176 Wash. 674, 30 P. (2d) 663, wherein the policy and application contained virtually the same provisions as those presented in this case.

Opportunity to pass on the application connotes a reasonable time within which to act thereon. Where a policy provides for reinstatement after lapse or forfeiture, and application is made for reinstatement, the insurer has a reasonable time within which to act on the application. 3 Couch Cyc. Ins. Law, 2305, § 697; *Leonard v. Prudential Ins. Co.*, 128 Wis. 348, 107 N. W. 646, 116 Am. St. 50; *Willis v. New York Life Ins. Co.*, 281 S. W. (Mo.) 407; *Rocky Mount Savings & Trust Co. v. Aetna Life Ins. Co.*, 201 N. C. 552, 160 S. E. 831; *Exchange Trust Co. v. Capitol Life Ins. Co.* (10 C. C. A.), 49 F. (2d) 133. Some of these cases are relied on by appellant. While those relied on by her held that under the particular circumstances the delay in passing on the application was unreasonable, they nevertheless affirm the rule above stated.

By way of escape from the controlling force of these principles, or rules, appellant contends that the respondent agreed in its letter of October 18, 1933, to give the matter of restoring the policies to their original standing immediate attention, and that respondent failed to fulfil its agreement. There are two prongs to this contention: (1) That the word "immediate," as used in the letter, has the same significance and meaning as the words "at once," "forthwith," or "instanter;" and (2) that, in any event, a question of fact was presented which should have been submitted to the jury.

Taking up the first part of the contention, it is to be noted that even if the matter be considered from the standpoint of the letter alone, it did not say that the company would immediately *reinstate* the policy, but only that it would give the application immediate *consideration*. What the company promised was immediate active attention, not an instantaneous final act. Consideration implies investigation, examination, reflection and conclusion. In the very nature of things, time would be an element, to a certain extent at least. It could not be expected that the insurer would act immediately without consideration, and a proper consideration would require some period of time.

We have had occasion to construe the meaning of the word "immediately" in various kinds of written instruments, including insurance policies, and have held that it does not necessarily mean "upon the instant," "forthwith," or "without any intervening lapse of time," but that there is a certain latitude to be given the significance of the word, and that it may mean "proximately," "directly," "close to," "within a reasonable time." *Deer Trail Consolidated Mining Co. v. Maryland Casualty Co.*, 36 Wash. 46, 52, 78 Pac. 135, 67 L. R. A. 275; *Spaulding v. Adams County,* 79 Wash. 193, 199, 140 Pac. 367; *State ex rel. Case v. Howell,* 85 Wash. 294, 147 Pac. 1159, Ann. Cas. 1916A, 231.

But, more than this, the letter is to be read in connection with the form of application which accompanied it, and which the insured signed and returned. The application very plainly indicated that the insurer was to have time within which to pass on it. Reading the two instruments together, we conclude that the insurer was not bound to reinstate the policies under any and all events, and that it was not required

to pass on the application finally until it had a reasonable opportunity to consider it.

Upon the other branch of the contention, appellant asserts that, aside from any question of immediate *action* on the application by the respondent, it was for the jury to say whether, under the evidence, the respondent had given the application immediate *consideration.* We do not agree with this contention.

The facts in this connection are undisputed. The application was received in the respondent's office on Saturday, October 21, 1933, at 9:56 a. m. The respondent was a signatory to the blanket code agreement limiting the work week to forty hours and was required to close its office at twelve o'clock on Saturdays. Within five or ten minutes after the delivery of the application at the office of the insurance company, it went to the renewal department, along with other like applications, which, at that time, averaged ten daily. The clerk of that department immediately made requisition for the files connected with these applications. The files were procured and checked for any information necessary to be considered by the company's risk committee. A memorandum was then prepared showing premiums due and premium tender. The application was then checked against a file showing changes in occupation, habits and health of the policy-holders.

Throughout the forenoon, the application was in the regular course of routine, and did not lie idle. At noon, when the office closed, the application had not yet reached the actuary who had the final duty of passing on it. In fact, the application did not reach his desk until 9:00 a. m. Monday, October 23. At that time, the insured was dead.

It will be observed that, on the day, and at the time, that the application was received by the company,

there were just two hours and four minutes left before closing time of the office. Necessarily, when noon arrived, the further progress of the application had to wait until the following Monday morning.

There was no negligence on the part of the respondent in its treatment of the application. Certainly, it was not required to interrupt and halt all other business in the office and devote the attention of its entire staff to one application, to the exclusion of all others. It must be held, as a matter of law, that, under the circumstances, there was no unreasonable delay on the part of the respondent in acting on the application. In fact, as already shown, there was no delay at all. The company and its employees acted with dispatch. To have submitted the question as one of fact to the jury would have been without reason or basis.

It is most unfortunate, of course, that, because of a chain of fortuitous circumstances, the appellant is deprived of the benefits that she might otherwise have realized from the policies. But the respondent is in no way responsible or chargeable therefor. Its obligation went no further than its contract. The policies themselves had lapsed. No contract for reinstatement had been executed at the time of the death of the person named as the insured. The time consumed in considering the application before acceptance by the insurance company was not unreasonable. During that brief period of time, the insured died. The respondent could not thereafter be required to make a contract with a person who then had no insurability and who at the time was dead.

The judgment is affirmed.

MITCHELL, GERAGHTY, BEALS, and TOLMAN, JJ., concur.