404 P.2d 628

STATE of Idaho, Plaintiff-Respondent,

v.

Joseph Martin BITZ, Defendant-Appellant.
No. 9436.

Supreme Court of Idaho.
July 19, 1965.

Jerry V. Smith, Lewiston, for appellant.

Allan G. Shepard, Atty. Gen., and M. Allyn Dingel, Jr., Asst. Atty. Gen., Boise,

Roy E. Mosman, Pros. Atty., Lewiston, for respondent.

KNUDSON, Justice.

During the early morning hours of May 20, 1962, defendant-appellant and one Howard Vindhurst were discovered hiding in a ventilator on the roof of Montgomery-Ward Store building in Lewiston, Idaho. There was evidence that the store had been unlawfully entered; the safe had been moved; some tools and drill bits were littered around the safe. Defendant and Vindhurst were arrested and later charged with first degree burglary.

On the way to the police station from the roof of the store building where he was found, defendant disclosed to the officer in charge of him where defendant's car was parked. The car was later moved to the police station and searched.

Although defendant and Vindhurst were separately charged, their cases were consolidated for trial, which commenced February 4, 1963 and resulted in a mistrial. There-

after this case against defendant was again set for trial, which commenced October 28, 1963 and resulted in a judgment of conviction entered November 6, 1963, from which this appeal is taken.

Under appellant's first assignment it is contended that "the trial judge erred in failing to acknowledge the propriety of defendant's affidavit of prejudice and refusing to recognize that he was thereby disqualified in the case and ousted of jurisdiction. The issue thereby presented is governed by I.C. § R 1–1801, the pertinent portion of which provides:

"4. When either party makes and files an affidavit as hereinafter provided, that he has reason to believe, and does believe, he cannot have a fair and impartial hearing or trial before a district judge by reason of the bias or prejudice of such judge. Such affidavit may be made by any party to an action, motion or proceeding, personally, or by his attorney or agent, and shall be filed with the clerk of the district court in which the same may be pending at least five (5) days before the day appointed or fixed for the hearing or trial of any such action, motion, or proceeding, (providing such party shall have had notice of the hearing of such action, motion, or proceeding for at least the period of five (5) days, and in case he shall not have had notice for such length of time, he shall file such affidavit immediately upon receiving such notice). Provided further that no such affidavit may be filed in any case after any contested matter in relation to such litigation has been submitted for decision to any judge sought to be disqualified, excepting that where a new trial is granted or ordered by either the district court or the Supreme Court, such affidavit may be filed as in the first instance. Upon the filing of the affidavit, the judge as to whom said disqualification is averred shall be without authority to act further in the action, motion, or proceeding, * * *."

The undisputed facts are that The Honorable John W. Cramer, district judge, presided during the trial of the defendant and Vindhurst which commenced February 4, 1963 and terminated February 7, 1963 upon the granting of a motion for mistrial. On March 8, 1963 defendant moved that his case be continued over the term, which motion was granted.

On October 7, 1963, counsel for defendant filed his motion for an order permitting him to withdraw as counsel for defendant. On October 25, 1963 the court granted counsel's said motion to withdraw as defendant's attorney. The minutes of the court of that date show that the court "then

appointed Jerry V. Smith counsel for defendant."

Defendant's affidavit of prejudice by virtue of which defendant sought to disqualify Judge Cramer was executed and served upon the prosecuting attorney on October 25, 1963. It was filed with the clerk of the district court on October 28, 1963. Respondent contends that said affidavit was not timely filed and consequently did not disqualify Judge Cramer from presiding at the trial which commenced October 28, 1963.

This record on appeal does not disclose exactly when the case against defendant was set for trial. However, we are led to believe from the statement of facts in appellant's brief that the setting of this case for trial occurred on the same date (October 25, 1963) that the court granted counsel's motion to withdraw as defendant's attorney and thereafter, on the same date, appointed the same counsel as defendant's attorney. It is stated in respondent's brief that "appellant's opening brief reviews the proceedings in the instant matter. His statement is essentially correct * * *." In this connection we have noted that respondent acknowledges that this record does not disclose any order or pronouncement of the trial court as to setting the case for trial or giving notice thereof to defendant. The case was set for trial to commence Monday, October 28, 1963. However, this record does not contain any showing that defendant or his counsel had any notice of the trial date prior to October 25, 1963.

On October 28, 1963, prior to the commencement of trial, defendant filed his affidavit of prejudice seeking to disqualify Judge Cramer under the provisions of I.C. § R 1–1801. Defendant also at that time filed his motion for a continuance of the trial with supporting affidavit, together with a motion for change of venue and supporting affidavit. Copies of the affidavit of prejudice and motion for change of venue were served upon the prosecuting attorney on October 25, 1963. Each of said motions were summarily denied. When defendant requested that the affidavit of prejudice be considered, the court stated:

> "I don't think any argument is necessary. I don't think it is available to the defendant. I have already heard part of this case and this is an affidavit based on a so-called justice court affidavit. There is nothing specific in it and having heard the case once and not having gone to the Supreme Court—If it had been reversed at the Supreme Court, then it would have been available. I don't think it is now available to the defendant, so the motion will be denied."

The affidavit is in proper form and complies with the recital requirements of the hereinbefore quoted portion of I.C. § R 1–1801. It is not claimed that Judge

Cramer ruled on any contested matter in the instant case and the parties have, in that connection, stipulated as follows:

"IT IS STIPULATED by and between the parties, through their counsel, that the District Court ruled on no matters involving the discretion of the Court from the inception of the case to, and including, the 25th day of October, 1963, other than for such rulings as may have been made during the course of the trial in February, 1963, which trial resulted in mistrial."

Respondent presents two contentions relative to this affidavit of prejudice: (1) That a "new trial" is not here involved and defendant was not entitled to file such affidavit, and (2) it was not timely filed.

As concerns the first of these contentions it is true that a "new trial" was not granted and is not here involved. In fact no trial had been had. The record shows that the proceedings which had taken place during February 1963 were declared to be a "mistrial" which is in essence a conclusion of law that no trial had taken place. Many authorities supporting this statement are cited in respondent's brief, among them being Vilander v. Hawkinson (1958), 183 Kan. 214, 326 P.2d 273, wherein it is stated:

"In other words, a mistrial is a nugatory trial and is equivalent to no trial, whereas a new trial recognizes and proceeds upon the assumption there has been a complete trial which, for sufficient reasons, has been set aside."

In Ex Parte Alpine, 1928, 203 Cal. 731, 265 P. 947, the court said, "a mistrial and a new trial are not the same thing in name or effect. A mistrial is equivalent to no trial." In 58 C.J.S. pp. 833–834, the term "mistrial" is defined as

"An erroneous, invalid, or nugatory trial; * * * a trial legally of no effect by reason of some error in the proceedings; a proceeding which has miscarried and the consequence is not a trial; a failure of trial. * * *

"In legal effect a mistrial is equivalent to no trial at all, and is declared because of some circumstance indicating that justice may not be done if the trial continues."

See also Vol. 27 Words and Phrases, Perm.Ed., p. 620.

We conclude that the proceedings which were terminated by the order granting defendant's motion for mistrial did not constitute a trial and that upon the entry of such order the case reverted to the status it had prior to the commencement of such proceedings. Since the stipulation hereinbefore referred to establishes that Judge Cramer had not ruled upon any contested matter involving the discretion of the court from the inception of the case to and includ-

ing October 25, 1963, except rulings made during the proceeding which was declared to be a mistrial, we conclude that defendant was entitled to file the affidavit of prejudice and the court erred in holding that the right to file such affidavit was not at that time available to defendant.

In considering the contention that the affidavit was not timely filed, we must consider that said section provides that if the party concerned shall not have had five days notice of the trial, he shall file such affidavit immediately upon receiving such notice. We have hereinbefore stated that there is no showing that defendant or his counsel had any notice of the trial date prior to October 25, 1963, which date was the last Friday in October. Under these facts it is clear that defendant was required to file such affidavit immediately upon receiving such notice. We must therefore construe the meaning of the word "immediately" as used in § R 1–1801.

The word "immediately" when used in a statute does not necessarily mean "without any intervening lapse of time." It is not a word of precise signification and does not necessarily import the exclusion of all interval of time or space, but its meaning must be determined by the context in which it was used and the purpose for which the statute using the word was enacted. In State v. Dorris (Mo.Ct.App., 1928), 9 S.W.2d 820, the court had under consideration a statute providing that any person convicted before a justice of the peace may appeal to the circuit court or other court having jurisdiction "if he shall, immediately after judgment is rendered, file an affidavit stating that he is aggrieved by the verdict and judgment in the case, and that he does not make his appeal for vexation or delay * * *." In construing the word "immediately" as used therein the court said "the term 'immediately' as used in the statute does not mean ten days, as is the provision in civil cases, nor does it mean at the convenience of the party, but it does mean 'within such convenient time as is requisite for doing the thing.' "

In this connection the following is quoted from Vol. 20 Words and Phrases, Perm.Ed., p. 156:

"The word 'immediately,' when used in a statute, is not synonymous with 'then and there,' but means such convenient time as is reasonably necessary for doing the thing. Taken alone, it excludes all mesne times. Legal lexicographers define it as being synonymous with 'within twenty-four hours.' 1 Bouv.Law Dict. 682; 1 Abb.Law Dict. 581. The word 'immediately,' in a statute providing that any person convicted before a justice of the peace may appeal, if he shall, 'immediately' after judgment is rendered, file an affidavit, etc., was construed not to mean

then and there, but to be equivalent to the words 'with all convenient speed'; and it was held that an appeal perfected within the next succeeding day after the rendition of the judgment was a prima facie compliance with the statute, and that the burden would be on the state to show that it was not taken with all convenient speed. State v. Clevenger, 20 Mo.App. 626, 627."

In Consolidated Vultee Aircraft Corporation v. Smith (1945), 63 Ariz. 331, 162 P.2d 425, the court stated:

"For all practical purposes, in dealing with the word 'immediately', as used in statutes and in agreements, the courts have construed the term as meaning within a reasonable time, taking into consideration all of the facts and circumstances of the particular transaction."

See also Foley v. New World Life Ins. Co. (1936), 185 Wash. 89, 52 P.2d 1264, 105 A.L.R. 473; People v. Odom (1937), 19 Cal.App.2d 641, 66 P.2d 206.

■ We think no better definition may be given to the word "immediately" as used in the statute here being considered than that which ascribes to it the meaning "within such reasonable time as is requisite for doing the thing."

The trial court did not express any opinion as to whether under the circumstances then existing the affidavit was timely filed. The sequence of events as they took place on October 25th are not disclosed by this record and consequently we shall consider them as having occurred in the usual manner.

■ The minutes of the court contained in the record do not state the time of day the court convened on October 25th nor the time at which counsel's motion to withdraw as attorney for defendant was presented to or decided by the court. The record shows that the affidavit was executed by defendant and served upon the prosecuting attorney on that day and it is stipulated "that the office of the Clerk of the District Court of the Tenth Judicial District of the State of Idaho, in and for the County of Nez Perce, was closed from 5 o'clock P.M., October 25, 1963, to 8 o'clock A.M., October 28, 1963."

In the absence of a showing to the contrary we cannot say that the few hours which counsel had on October 25th were reasonably adequate within which to consult his client, who was in jail; then to prepare the affidavit of prejudice and other motions together with supporting affidavits which counsel considered proper and necessary to present on behalf of his client; and thereafter to procure defendant's signature to such affidavits; cause such papers to be served upon the prosecuting attorney and filed with the clerk of the district court.

It is evident that counsel accomplished all of it except the filing before 5 P.M. on that day and he had no opportunity thereafter to file any paper until after 8 A.M. on October 28th, at which time they were filed. Under these circumstances we hold that the affidavit of prejudice was timely filed, and that the judge to whom the disqualification was directed was thereafter without authority to act further in the action other than is authorized by the provisions of I.C. § R 1–1801.

Defendant contends that the court erred in admitting in evidence the testimony of officers regarding articles found in defendant's automobile which were discovered as a result of an alleged unlawful search. The significant facts to be considered in connection with this contention are briefly stated as follows:

Defendant was arrested, searched and handcuffed immediately after he was found hiding in a ventilator on the roof of a building wherein a burglary had been committed. The exact time he was found is not stated, however Officer Bishop, who was in charge of the search for the offender, testified that he went to the scene of the burglary immediately after being called by telephone at 2:15 on the morning of May 20, 1962; that he and a number of other officers thereafter conducted a complete search of the building before defendant was discovered which was described as having taken place "at an early hour in the morning." Following his arrest defendant was taken to the police station where he was again searched and imprisoned. En route to the police station defendant, at the request of the officer accompanying him, disclosed to such officer the location of his automobile and after defendant had been imprisoned the automobile was taken to the police - department where it was later searched by Officers Bishop and Fannan. The exact hour of the day when the search was made is not disclosed by the record, however Officer Bishop stated that he did not return to the police station until between 6:00 and 7:00 A.M. and the search was made sometime subsequent to that time.

Officer Bishop was permitted over defendant's objection to testify as to what he found in the car and to give the following quoted description of the articles found therein:

"A   We found a number of clothes, different items of clothing and also in the trunk of the car was a radio monitoring set.

"Q   What kind of a set was that, do you know?

"A   I believe it was a Motorola. I am not positive but—

"Q   What are such sets used for?

"A  They are to listen to calls, radio calls.  They cannot transmit but they can receive.

"Q  By using such a set is it possible to—By tuning to the police frequency can you listen to police calls?

"A  Right.

"Q  Was this particular set equipped to operate?

"A  It was equipped to operate.  It wasn't hooked up at that time."

Neither of the two officers who made the search were given permission by defendant to make the search involved.

A like issue was considered and resolved in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, wherein the facts involved were strikingly similar to the facts in the instant case.  The court held that the search therein involved violated the defendant's rights under the provisions of the Fourth Amendment.  See also People v. Burke (1964), 61 Cal.2d 575, 394 P.2d 67, 39 Cal.Rptr. 531.  Under the authority of Preston v. United States, supra, we conclude that the trial court erred in admitting the evidence discovered as a result of the search of defendant's car which evidence was clearly prejudicial.

■  Appellant's remaining contention is that "the court erred in appointing as counsel for defendant an attorney who had previously been permitted by the court to withdraw for cause."  On October 7, 1963, counsel for defendant, Jerry V. Smith, filed his motion for an order permitting him to withdraw as attorney for defendant.  This motion was filed 21 days before the commencement of the trial.  The ground and reason for such request was stated to be that he and defendant "cannot agree upon the manner in which the defendant's case should be handled and presented, and that petitioner's further representation of the defendant may be prejudicial to the defendant."  Thereafter and on October 25, 1963, the court granted counsel's said motion and at the same court session appointed the same attorney, Jerry V. Smith, as counsel for defendant during his trial set to commence the following Monday morning.  It is contended that this action was not only a puzzling exercise of judicial discretion but constituted a deprivation of due process to the defendant.

The relation of attorney and client has always been regarded as one of special trust and confidence which demands personal faith and confidence in order that they may work together harmoniously.  See Lee v. United States (1956), 98 U.S.App. D.C. 272, 235 F.2d 219.  Since the court had granted counsel's motion upon the ground stated, it clearly constituted an abuse of discretion to appoint the same counsel to proceed with defendant's trial.

The judgment of conviction is reversed and the cause remanded for a new trial consistent with this opinion.

McQUADE, C. J., and McFADDEN and SMITH, JJ., concur.

TAYLOR, Justice (concurring in part and dissenting in part).

I concur in the opinion submitted by Justice Knudson on all points decided except the holding that the evidence discovered by the search of defendant's automobile was inadmissible. The decision on that point is based upon Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed. 2d 777. I completely disagree with the reasoning of the court in the Preston case. An automobile is not to be compared with the person of an accused, nor with his house, papers or effects. The result reached in the Preston case is not remotely related to the protection sought by those who drafted and adopted the 4th amendment.

Upon the making of a lawful arrest of one charged with, or suspected of, a felony, the search of the accused's automobile in connection with the immediate investigation of the charge, whether in the presence of the accused upon the making of the arrest or at such other place and time as may reasonably be required by the circumstances surrounding the investigation, is not an unreasonable search. In my opinion, it is the duty and right of the officers to make such a search, and the state should have the benefit of any evidence so discovered for the more adequate protection of its citizens. The rule of the Preston case is a major roadblock in the way of apprehending and punishing criminals, and should be reversed. The present astronomical acceleration of crime is evidence of the damaging effect of such decisions, and I have not discovered any compensating benefit, and none has been called to my attention.