469 P.2d 752

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Felipe ZAMORA and Richardo Zamora, Defendants-Appellants.**

**No. 10404.**

Supreme Court of Idaho.

May 27, 1970.

**626**

Derr, Derr & Walters, Boise, for defendants-appellants.

Robert M. Robson, Atty. Gen., Howard F. Manly, Asst. Atty. Gen., Boise, C. Robert Yost, Pros. Attorney, Caldwell, for plaintiff-respondent.

SHEPARD, Justice.

This case is an appeal by the brothers Zamora from a judgment of conviction of unlawful possession of narcotics. Felipe and Ricardo Zamora were jointly tried before a jury, found guilty as charged and sentenced by the trial judge to an indeterminate sentence not to exceed ten years. They have appealed from that judgment assigning error in the admission of certain evidence obtained as a result of an allegedly unconstitutional search and seizure.

We affirm the judgment of conviction. The present state of the law requires a judicial examination into the reasonableness of the search which turns upon the facts and circumstances of each individual case. We therefore are required to consider the totality of the circumstances surrounding the search which produced the evidence, the admission of which is complained of in the case at bar.

In the early evening on June 29, 1968, the Zamoras were apprehended and arrested following a high speed chase of Richardo Zamora's automobile during which Felipe Zamora was observed throwing a tobacco can and other items from the automobile. The Zamora vehicle was overtaken and stopped and the three men taken into custody. The officers immediately retraced the course of travel and, among other items, recovered the tobacco can, which contained 17 grams of marijuana.

An officer drove the Zamora vehicle to the Canyon County sheriff's office where the Zamoras and Garza were booked for narcotics possession. While the booking was taking place the interior of the Zamora automobile was searched. No warrant for the search was obtained, the Zamoras were not present at the search and their consent had not been given. Therein were found two paper sacks, one of which contained an additional 10 grams of marijuana and the other of which contained only a trace of marijuana. One sack was not clearly visible from outside the car since it was hidden on top of the glove compartment within the dashboard. During the booking procedure the contents of Garza's pockets were taken and subsequently analyzed. The pocket residue was found to be lint, fuzz, straw and a trace of marijuana. At trial the tobacco can, the two paper sacks and the residue from the pockets of Garza were all admitted into evidence over defendant's objections. For the reasons set out below, it is our opinion that the admission of the sacks and tobacco can was correct. Garza did not appear at trial, the residue from his pockets containing a trace of marijuana was not shown to be material to the charge of possession of narcotics by the Zamoras and therefore the admission of such evidence was error, but harmless error not requiring reversal.

We point out initially that prior to the search the law enforcement officers had recovered the tobacco can thrown from the car which contained 17 grams of marijuana. The officers therefore had knowledge that the defendants were in possession of and transporting narcotics in the automobile immediately prior to their apprehension and arrest. We believe this brings the facts in the case at bar substantially within the rule of law set out in cases where the fruits of the crime were in plain sight within the automobile and a warrantless search was therefore justified. See Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

Appellants contend that the case at bar is controlled by the decision of Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). That opinion in-

validated a warrantless search by law enforcement officers of defendant's automobile. Preston, while sitting in his automobile, was arrested on a charge of vagrancy. Thereafter, in the absence of the defendant, a warrantless search was conducted of his automobile and items were found in the trunk thereon which in part resulted in a different criminal charge being lodged against the defendant and said items were admitted into evidence at the trial. In *Preston* no claim was made that there was any nexus between the reason for which the defendant was arrested and the reason for the search of the automobile. The Court stated, however, in *Preston:*

> "Common sense dictates, of course, that questions involving searches of motorcars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses. For this reason, what may be an unreasonable search of a house may be reasonable in the case of a motorcar."

The Court in Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), reiterated certain language from *Preston* stating:

> "We made it clear in *Preston* that whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case and pointed out, in particular, that searches of cars that are constantly movable may make the search of a car without a warrant a reasonable one although the result might be the opposite in a search of a home, a store, or other fixed piece of property."

In *Cooper* the United States Supreme Court distinguished the set of facts in that case from *Preston* and found the warrantless search in *Cooper* reasonable and therefore constitutional.

We hold that *Cooper* controls the result in this case. Like *Cooper,* the defendants herein were held on charges closely related to the reason for which the search was conducted. Furthermore, the search was substantially contemporaneous with the arrest. Under these circumstances, the conviction must be affirmed and the warrantless search of defendant's vehicle held constitutional as did the courts in similar factual situations in the following cases: Moreno-Vallejo v. United States, 414 F.2d 901 (5th Cir. 1969); People v. Jones, 38 Ill.2d 427, 231 N.E.2d 580 (1967); People v. Nugara, 39 Ill.2d 482, 236 N.E.2d 693 (1968); People v. Brown, 38 Ill.2d 353, 231 N.E.2d 577 (1967); State v. Hock, 54 N.J. 526, 257 A.2d 699 (1969); United States v. Dento, 382 F.2d 361 (3rd Cir. 1967).

Appellants contend that *Cooper* is not applicable to the case at bar. They suggest that the warrantless search in *Cooper* was inextricably interwoven with and justified by the California statute which allows the impounding of a motor vehicle used to transport narcotics and they therefore reason that the *Cooper* rationale is only applicable in cases involving an automobile impounding statute such as California. We believe such is an artificial and unduly restrictive reading of *Cooper.* The same contention has been made and rejected in the following cases: Moreno-Vallejo v. United States, supra; People v. Jones, supra; People v. Nugara, supra; People v. Brown, supra; State v. Hock, supra; and United States v. Dento, supra. Further, the Court in *Cooper* based its holding on the federal constitutional rule and could not have based it on the California statute since in fact the California courts have held that the statute does not authorize a search. See 81 Harvard L.Rev. 112; 51 Minnesota L. Rev. 533; 1968 University of Illinois Law Forum 401.

We recognize that the United States Circuit Court for the Tenth Circuit Court of Appeals in Wood v. Crouse, 417 F.2d 394 (10th Cir. 1969), does not agree with the result enunciated herein. However, we believe the previously cited cases from other Circuit Courts and other State Supreme Courts are the better reasoned opinions.

The Court in United States v. Dento, supra, stated the matter as follows:

"Under the facts before us Preston v. United States, supra, does not control and we are satisfied that the search before us was reasonable. There are two basic points of departure separating the Preston decision from this appeal. First, unlike Preston the instant search was substantially contemporaneous with the arrest (the entire arrest and search procedure was completed within twenty minutes). Secondly, there was a reasonable nexus between the offense the defendant was arrested for and the search of his automobile, where as in Preston the search was entirely unrelated to the arrest on the charge of vagrancy. In distinguishing Preston we do not overlook the statement made by the Supreme Court that '[o]nce an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest.' 376 U.S. 364 at 367, 84 S.Ct. 881 at 883. However, no situations are identical and a judicial examination into the reasonableness of a search depends a great deal upon the facts and circumstances of the individual case. Cf. United States ex. rel. Murphy v. State of New Jersey, 260 F.Supp. 987 (D.N.J.1965), aff'd, 369 F.2d 698 (3 Cir. 1966), cert. denied, 386 U.S. 965, 87 S.Ct. 1044, 18 L.Ed.2d 114 (1967). Explaining Preston, the Supreme Court stated in Cooper v. State of California, 386 U.S. 58, 59, 87 S.Ct. 788, 790, 17 L.Ed.2d 730 (1967):

'We made it clear in Preston that whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case and pointed out, in particular, that searches of cars that are constantly movable may make the search of a car without a warrant a reasonable one although the result might be the opposite in a search of a home, a store, or other fixed piece of property.'

"Thus, in the ambiance which marked the search of the defendant's car the officers were justified in taking reasonable safety precautions, necessitating the removal of the cars from the highway, and seeing to it that those precautions should not invalidate a search otherwise incidental and reasonable. Therefore, since there was no violation of defendant's constitutional rights, the evidence seized by the New Jersey State Police was properly introduced at trial."

We particularly note herein that we are not informed nor does the record disclose the charge for which the defendants herein were initially arrested when their car was stopped by the law enforcement officers. The record does reveal, however, that when the defendants were taken to the sheriff's office they were there booked for possession of narcotics.

■ We further point out that the recent case of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), enunciates a somewhat new and different standard for warrantless seaches incident to an arrest. However, Chimel involved the search of the home of the petitioner therein and the cases are clear that a different standard prevails regarding the warrantless search of a motor vehicle and Chimel is therefore distinguishable from the case at bar. In any event, Chimel v. California, supra, is prospective in its application and has no bearing on the outcome of the case at bar. United States v. Bennett, 415 F.2d 1113 (2nd Cir. 1969); People v. Edwards, 458 P.2d 713, 80 Cal.Rptr. 633 (Cal.1969); New York ex rel. Muhammad v. Mancusi, 301 F.Supp. 1100 (S.D. N.Y.1969).

■ We believe it clear that the Fourteenth Amendment to the United States Constitution does not preclude all warrantless searches. It merely precludes "unreasonable" searches made without a warrant. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Cooper v. California, supra. In the case at bar, the totality of the circumstances indicates that the search was incident to and closely re-

lated to the arrest and charging of the defendants. It was substantially contemporaneous with the arrest and charging of the defendants. On these and the further basis that the officers had knowledge prior to the search that the defendants had been in possession of narcotics while riding in the automobile, we hold that the search herein was reasonable and not precluded by the Fourteenth Amendment merely because it was warrantless.

Our attention is called to the Idaho cases of State v. Oldham, 92 Idaho 124, 438 P.2d 275 (1968); State v. Loyd, 92 Idaho 20, 435 P.2d 797 (1967); State v. Haggard, 89 Idaho 217, 404 P.2d 580 (1965); State v. Bitz, 89 Idaho 181, 404 P.2d 628 (1965), and State v. Peterson, 81 Idaho 233, 340 P.2d 444 (1959). While all of these cases involved warrantless searches of automobiles, with the exception of *Bitz,* they turned upon consent having been given to the search or objects which were seized because they were in plain sight. In *Bitz* evidence was obtained from a warrantless search of the defendant's automobile. The defendant therein was apprehended hiding on top of a building which had been burglarized and thereafter informed officers of the location of his automobile. Five or six hours thereafter the automobile was located and searched. Articles obtained during the search of the automobile were later admitted in evidence over the objection of the defendant. It was held in *Bitz* that the admission of such evidence was error. The search of the automobile was neither incident to nor closely related to the activities or arrest of the defendant. It was not substantially contemporaneous with the arrest of the defendant. The totality of the circumstances surrounding the search in *Bitz* indicates that the warrantless search was unreasonable and that case is clearly distinguishable from the case at bar.

We finally hold that the pocket residue taken from Garza was of minimal character compared to the overwhelming quantity of correctly admitted evidence. It could not reasonably have been significant in contributing to the conviction and the admission of such pocket residue as evidence was harmless error. Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed. 2d 171 (1963). The judgment of conviction is affirmed.

McFADDEN, C. J., and DONALDSON and SPEAR, JJ., concur.

McQUADE, Justice (dissenting).

I must respectfully dissent from the opinion of the majority.

Today's decision is initially justified as "substantially within the rule of law set out in cases where the fruits of the crime were in plain sight within the automobile and a warrantless search was therefore justified. See Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). The *Harris* case is not at all authority to support the admission of the disputed evidence in this action. In that case an automobile used in the commission of a robbery was impounded as evidence by the District of Columbia police. In the process of impounding the vehicle, an officer opened a door so that he might roll up the car's windows. When he did so he saw a registration card which belonged to the robbery victim lying in plain view, face up on the metal stripping of the door sill. The Supreme Court of the United States, in a brief *per curiam* opinion, upheld the use of the registration card as evidence at Harris' trial under the traditional rule that items open to view are subject to warrantless seizure.[1] The key

---

1. This traditional rule is based on the theory that such seizures are not the products of searches. The interest protected by the Fourth Amendment is the citizen's right of privacy, and intrusions into that privacy are the "searches" to which it refers. A seizure of an item

in plain sight, something which is open and exposed to public view, does not involve a "search" because it is not an intrusion into privacy. That can not be said of this case. *See* Ker v. California, 374 U.S. 23, 28, 42–43, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); United States v.

consideration in that case was that the evidence was not seized in the course of a search. There having been no search, there could have been no invasion of privacy and, therefore, no warrant was required.

The same can not be said of the case before us. The only item seized from the Zamora automobile which may have been in plain sight was the paper sack containing only a few plant particles, a mere trace of marijuana. This open sack was lying "behind the front seat on the floor board, on the driver's side of the vehicle" (testimony officer Ballou). From the description given by the officers, it does not appear that this sack, which contained practically no narcotic substances, was in plain sight. What is more important, and what distinguishes this case from *Harris*, is that this sack was not seized as a result of a happily accidental glance at an item in plain sight. This paper bag was seized in the course of a thorough search of the appellants' automobile, and, based on all evidence in the record, it would not have been seized *but for* that systematic, warrantless, rummaging search. There is not a shred of evidence to support the majority's contention that the items taken by the police from the car were seen by them, or could have been seen by them, except in the course of this warrantless search. Harris v. United States is not authority to support the search in this case.[2]

The law governing searches of automobiles in cases of this sort was essentially established in Preston v. United States.[3] In that case the Supreme Court of the United States unanimously held that unreasonable searches of automobiles were as repugnant to the mandate of the Fourth Amendment of the United States Constitution[4] as if they were made of dwellings and offices. "Our cases make it clear that searches of motorcars must meet the test of reasonableness under the Fourth Amendment before evidence obtained as a result of such searches is admissible."[5] The facts of that case were very similar to the ones before us. The defendants in that case were arrested on a vagrancy charge while sitting in a parked automobile. The car was not searched at that time, but was driven by an officer to the police station and then towed to a garage. There, soon after the defendants were booked, several police officers searched the car from the glove compartment to the trunk, and discovered a variety of items of the sort used by armed robbers. This material was later used against the defendants over their objections made at trial.

It was there argued, as it is here, that the search and seizure was justified as "incidental to a lawful arrest." The Supreme Court of the United States rejected that contention as being without merit. In so holding, that Court, per Justice Black, said:

"Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. * * * This right to search and seize without a search warrant extends to things under the accused's immediate control, * * * and, to an extent de-

---

Lefkowitz, 285 U.S. 452 at 465, 52 S.Ct. 420, 76 L.Ed. 877 (1932); Go-Bart Importing Co. v. United States, 282 U.S. 344, 358, 51 S.Ct. 153, 75 L.Ed. 374 (1931); United States v. Lee, 274 U.S. 559, 563, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); Hester v. United States, 265 U.S. 57, 58, 44 S.Ct. 445, 68 L.Ed. 898 (1924).

2. Accord, Scott v. State, Nev., 465 P.2d 620, (2/27/70).

3. 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

4. The Fourth Amendment's mandate, both as to its substantive standards and the exclusionary rule which enforces them, is applicable to the states by operation of the Due Process Clause of the Fourteenth Amendment. Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); State v. Bitz, 89 Idaho 181, 404 P.2d 628 (1965).

5. 376 U.S. 364, at 366, 84 S.Ct. 881, at 883.

pending on the circumstances of the case, to the place where he is arrested[.] * * The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime * * *. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. * * Here, we may assume, as the Government urges, that, either because the arrests were valid or the police had probable cause to think the car stolen, the police had the right to search the car when they first came on the scene. But this does not decide the question of the reasonableness of a search at a later time and at another place. * * * The search of the car was not undertaken until petitioner and his companions had been arrested and taken into custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime * * *. Nor, since the men were under arrest at the police station and the car was in police custody at a garage, was there any danger that the car would be moved out of the locality or jurisdiction. * * * We think that the search was too remote in time or

place to have been made as incidental to the arrest and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible." [6]

In that statement, the United States Supreme Court clearly delineated the rule concerning searches of automobiles and the limits on the "incidental to a lawful arrest" exception to that rule. A warrantless search of an automobile cannot, after *Preston,* be justified as incidental to an arrest if the arrestee is no longer in or near the car or is not able to control the automobile. This is so because the purpose of the exception is to remove weapons which might be used to injure officers or to effect an escape and to protect evidence from concealment or destruction. Those are the limits of the reason for the rule and, therefore, of the rule itself as articulated in *Preston.*

This and a very few other narrow exceptions to the normal rule that a valid search warrant is necessary to render a search reasonable under the Fourth Amendment are based on a recognition that in some instances haste is necessary and "the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search." [7] The United States Supreme Court has clearly indicated that these exceptions are based solely on the exigencies of necessity, and that they should not be made into rules by application in situations where their discreet purposes would not be served.[8] As was true in *Preston,* none of

---

6. Id., at 367–368, 84 S.Ct. at 883.

7. Camara v. Municipal Court, 387 U.S. 523, 533, 87 S.Ct. 1727, 1733, 18 L.Ed.2d 930 (1967); see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (stop and frisk); Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 298–300, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (search for a suspect during hot pursuit); Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (search of a vehicle which might be removed from jurisdiction).

8. *See* Chimel v. California, 395 U.S. 752, 762–765, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (*following* Preston v. United States, *supra*); United States v. Lefkowitz, *supra* note 1; Go–Bart Importing Co. v. United States, *supra* note 1; Carroll v. United States, *supra* note 7, 267 U.S. at 156, 45 S.Ct. 280; Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

the circumstances which necessitate haste and, therefore, allow warrantless searches are present in this case. Most remote of all are the justifications of the "incident to a lawful arrest" exception as it is formulated in *Preston*. The Zamoras were no longer in or around the car. They could not move it. They could neither use it nor anything in it to harm the officers or to make an escape. And they could not conceal or destroy any of the evidence which was seized from it. There was, in short, no justification for the warrantless search in this case. The evidence seized thereby should not have been used at the appellants' trial.

The State urges, however, that the *Preston* rule should not apply, because the exception to the *Preston* holding announced in Cooper v. California [9] is applicable to this case. This contention is, I believe, mistaken.

The *Cooper* case involved a search of an automobile which had been impounded under California statutes which are indistinguishable from I.C. §§ 37–3208 and 37–3209. These sections require the impounding and forfeiture of any automobile used in the crimes of possessing or transporting a narcotic. The purpose of the statute is to hold such a car as evidence in a trial involving those crimes. If a car is impounded pursuant to these statutes it must be held by the police until it is either declared forfeit or released in a forfeiture proceeding. The holding in *Cooper* was that a search of an automobile held by the police pursuant to such a statute (a week following a criminal defendant's arrest) was "reasonable" even if done without a warrant. In reaching that conclusion, Justice Black, speaking

for a closely divided Court, distinguished *Preston* as follows:

"This case is not *Preston*, nor is it controlled by it. Here the officers seized petitioner's car because they were required to do so by state law. They seized it because of the crime for which they arrested petitioner. They seized it to impound it and they had to keep it until forfeiture proceedings were concluded. The subsequent search of the car—whether the State had 'legal title' to it or not—was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained. The forfeiture of petitioner's car did not take place until over four months after it was lawfully seized. It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it." [10]

Practically none of the considerations which were considered important to the *Cooper* holding are present in this case. The statutes are the same, but ours was not used. Ricardo's car was not impounded or retained as evidence for four months. It was not subject to a forfeiture proceeding. The police were not planning to retain the Pontiac in their custody for any appreciable length of time, and they did not. The State cannot, therefore, use *Cooper* which explicitly turned on the length of time the car was held under a special statute not used in this instance as an excuse for a search so repugnant to the requirements of the Fourth and Fourteenth Amendments. The mere existence of a statutory procedure which, under *Cooper,* might have been followed but was not, cannot make this warrantless search "reasonable." [11]

9. 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

10. *Id.*, at 61–62, 87 S.Ct. at 791.

11. The majority reasons that *Cooper* could not have turned on the statutory impounding procedure, because the California court had explicitly held that their

statute did not render the search reasonable. This theory overlooks the fact that the California court so held because it understood that it was bound to that decision by Federal constitutional rules. People v. Cooper, 234 Cal.App.2d 587, 44 Cal.Rptr 483 (1965) ; *see* 386 U.S., at 59, 87 S.Ct. 788. The Federal constitu-

In *Cooper,* Justice Black stated:

"Their subsequent search of the car * * was closely related to the reason petitioner was arrested * * *."

The majority has seized on this language, and, applying it out of context, uses it in an attempt to draw this case within *Cooper* and to distinguish it from *Preston* on a "nexus" theory. The majority urges that *Cooper* held that a warrantless search of an automobile is constitutionally reasonable if the evidence searched-for and seized is related to the charge on which the defendant was arrested or held. The majority has misread the opinion in *Cooper.* The importance of the criminal charge under which the defendant in *Cooper* was arrested or held lay not in its relationship to the evidence seized as a result of the warrantless search, but in the simple fact that a narcotics charge allowed the police to impound the car pursuant to the statute:

"But the police arrested Preston for vagrancy, not theft, *and no claim was made that the police had authority to hold his car on that charge.* The search was therefore to be treated as though his car was in his own or his agent's possession, safe from intrusions by the police or anyone else. The situation involving petitioner's car is quite different.

\* \* \* \* \* \*

"Preston was arrested for vagrancy. An arresting officer took his car to the station rather than just leaving it on the street. It was not suggested that this was done other than for Preston's convenience *or that the police had any right to impound the car and kept it from Preston or whomever he might send for it."* (Emphasis supplied) [12]

The case before us is similar to *Preston* and unlike *Cooper.* Here the police, because they did not employ I.C. §§ 37–3208 and 37–3209, did not have to hold the car and were obligated to hand it over to Ricardo Zamora or any of his representatives. Although the *Cooper* opinion is confusing, ambiguous, and remarkably unenlightening,[13] there is no blinking the fact that the determinative consideration in that case was that the police were required to hold the car for an extended period and that the defendant could not have access to it. That was not true in this case.

Just as *Cooper* does not support the contention that all that is needed to metamorphose a warrantless search into a constitutionally reasonable one is a "nexus" between the seized evidence and the charge upon which a defendant is arrested, no such rule may be derived from any other

tional rule announced in *Cooper* was that the state statutory impounding procedure rendered the warrantless search "reasonable." The *Cooper* case turned on the fact that the state statute existed *and was used.*

12. 386 U.S., at 60 and 61, 87 S.Ct. at 790.

13. I believe that the majority opinion in *Cooper* is utterly at odds with the jurisprudence of the Bill of Rights. *See* cases cited *supra* note 6. *Cooper* has inspired confusion, chagrin, and disagreement among the states and between the circuits. *See, e. g.,* Williams v. United States, 412 F.2d 729, 732–735 and notes 4 and 5 (5th Cir. 1969); Commonwealth v. Togo, Mass., 248 N.E.2d 285, 286 (1969). When announced it was greeted with pleas that it be overruled. *E. g.,* The Supreme Court, 1966 Term, 81 Harv.L.Rev. 112, at 119–20 (1967).

It may fairly be doubted that the unsatisfactory *Cooper* opinion has any continued vitality after Chimel v. California, *supra* note 8; *see* Steel v. State, Ark., 450 S.W.2d 545 (3/2/70). In place of principles and reasoned judgment, it offers the United States v. Rabinowitz conclusion that "the relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." 339 U.S. 56, 66, 70 S.Ct. 430, 94 L.Ed. 653 (1950). Left without clear principles to guide its decision, it is not surprising that the majority has chosen the sterile, formalistic theory upon which today's decision rests. If this was *Cooper's* intended result, I can only conclude that *Preston* has been overruled *sub silentio.* See Cooper v. California, *supra,* 386 U.S. at 65, 87 S.Ct. 788 (dissenting opinion of four justices).

United States Supreme Court case.[14] The reasoning of United States v. Dento,[15] is too arid to be convincing on this point. In Wood v. Crouse,[16] Judge Hill, speaking for a unanimous Court in a case factually indistinguishable from the one before us, acutely criticized the *Dento* analysis as follows:

"This court cannot be persuaded by such artificial attempts at distinction without a difference. The Court in Preston in no way indicated that the time factor, *i. e.,* the precise time period between arrest and search, was to be controlling. In fact, the Court did not indicate the amount of time involved except to note that the search was 'soon after' the defendants had been booked at the station. Timing is significant only in the sense that the search is either at the time of the arrest or it is not; if it is not, it is irrelevant whether the elapsed time is twenty minutes or twenty hours. Rather, the crucial distinction, clearly indicated in Preston, is that if the search is not made at the time of the arrest, but is conducted at a later time when the vehicle is in custody and its occupants in jail, then the justification for an incidental search, *e. g.,* the need to preserve evidence, protect the arresting officers, and prevent escape, no longer obtains and a warrant must be secured. Obviously, the absence or presence of a justification for the search will not depend solely upon whether the delay is brief or lengthy. Accordingly, it is the existence or nonexistence of a justification for a warrantless search—not the mere passage of time— that is determinative.

"The second distinction attempted in Dento, namely, analysis of the nature of the relationship between the offense prompting the arrest and the later search, can have significance in determining whether the search was reasonable only as it relates to probable cause. The Court in Dento must have intended to indicate that the subsequent search is valid when closely related to the reason for the arrest because when so related there is probable cause for the search. *Cf.,* United States v. Butenko, 384 F.2d 554, 566 (3d Cir. 1967), vacated, Alderman v. United States, 394 U.S. 165, 89 S. Ct. 961, 22 L.Ed.2d 176. The difficulty with that position is that it misconceives the function of probable cause in this context. Thus, the fact that officers have probable cause does not dispense with the requirement of a search warrant. Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). Consequently, it is not the existence of probable cause, but the presence of factors justifying the failure to procure a warrant that is critical. [Footnote omitted] When so viewed it becomes apparent that the relationship between the offense and the search is of no consequence since that relationship can have little bearing on the feasibility of first obtaining a search warrant. [Footnote omitted] " (417 F.2d 394, at 397–398).

---

14. It is important to note that, even if the "nexus" theory is good law, there was no "nexus" in this case. Despite a contrary implication in the statement of facts of the majority, the record discloses that appellants were arrested and personally searched well before the tobacco tin of marijuana was discovered. There was absolutely no evidence that the appellants possessed marijuana in the hands of the police at the time the appellants were arrested. There is no indication upon what charge appellants were arrested. Without some indication of what that charge was, no "nexus" between it and the evidence can be established. The only "nexus" was between the evidence and the charge for which appellants were booked. The holding of the majority, by allowing into evidence items which are related only to the booking charge, will invite "fishing expeditions" on the part of the police. Officers may now bootstrap blatently illegal intrusions into citizens' privacy into constitutional reasonableness once the search is completed merely by making the booking charge conform to the evidence illegally seized.

15. 382 F.2d 361 (3d Cir. 1967).

16. 417 F.2d 394 (10th Cir. 1969).

Today's decision shifts the authority to decide if there is probable cause to make a search from an impartial jurist to a police officer in the heat of criminal investigation. Now if a policeman can justify making an arrest, he can justify ransacking the vehicle of the person arrested. The majority today approves of the precise evil against which the Fourth Amendment was designed to be a bulwark. As was observed in the McDonald v. United States case:

"We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy is deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. * * * And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of

the situation made that course imperative." [17]

The majority, as it today conveniently ignores the basic right of these marijuana possessors not to be subjected to a warrantless search, effectively stifles the essential freedoms of all citizens of Idaho. The words of Justice Frankfurter, in his belatedly vindicated [18] dissent to the justly perished *Rabinowitz* decision, are most appropriate in this context.

"The old saw that hard cases make bad law has its basis in experience. But petty cases are even more calculated to make bad law. The impact of a sordid little case is apt to obscure the implications of the generalization to which the case gives rise. Only thus can I account for a disregard of the history embedded in the Fourth Amendment and the great place which belongs to that Amendment in the body of our liberties as recognized and applied by unanimous decisions over a long stretch of the Court's history.

"It is a fair summary of history to say that the safeguards of liberty have frequently been forged in controversies involving not very nice people. And so, while we are concerned here with a shabby defrauder, we must deal with his case in the context of what are really the great themes expressed by the Fourth Amendment." [19]

17. 335 U.S. 451, 455–456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948).

18. Chimel v. California, *supra* note 8, 395 U.S. at 760–761, 89 S.Ct. 2034.

19. United States v. Rabinowitz, *supra* note 13, 339 U.S. at 68–69, 70 S.Ct. at 436.